Argued and submitted June 4, question answered August 8, 1985

## BURKETT et al,
*Plaintiffs,*

*v.*

## FREEDOM ARMS, INC. et al,
*Defendants.*

(USDC Civil 84-784; SC S31680)

704 P2d 118

James S. Coon, of Aitchison, Imperati, Paull, Barnett & Sherwood, Portland, argued the cause for plaintiff. With him on the brief was Alice L. Dale, Portland.

Elizabeth Samson, of Mitchell, Lang & Smith, Portland, argued the cause and filed the brief for defendant Freedom Arms, Inc.

E. Richard Bodyfelt, Portland, argued the cause for defendant North American Arms. On the brief was Peter R. Chamberlain, of Bodyfelt, Mount, Stroup & Chamberlain, Portland.

Before Peterson, Chief Justice, and Lent, Campbell, Roberts, Carson and Jones, Justices.

JONES, J.

## JONES, J.

This case is before us on certification from the United States District Court for the District of Oregon pursuant to ORS 28.200.[1] Plaintiffs brought this diversity action in federal district court seeking to recover damages from the defendant manufacturers of a small, easily concealable handgun that severely injured plaintiff Irving Burkett, who was shot during the jail escape of Stephen Kessler in July 1982. The pertinent allegations in plaintiffs' amended complaint are as follows:

"VI.

"On July 25, 1982, Plaintiff Irving Burkett was seriously and permanently injured when a .22 caliber single-action handgun, commonly referred to as a 'freedom arms handgun', which is smaller than a derringer and shoots long rifle bullets, and which is manufactured so as to be concealable as a decorative item on the front of a large belt buckle, was discharged by an inmate during a jail break from Rocky Butte Jail, striking Plaintiff in the right side of his head. The gun used in the shooting of Plaintiff was manufactured and marketed by the Defendant Freedom Arms, Inc. and/or North American Arms. This gun was marketed to the general public. The shooting, as well as the manner in which the shooting took place, were entirely foreseeable to the Defendants. As a direct and proximate result of injuries sustained in the shooting, the Plaintiff is now severely and permanently debilitated.

"VII.

"At all times relevant herein, each of the named Defendants was engaged in the design, manufacture and/or marketing of handguns, including the gun in question.

"VIII.

"The design, manufacture and marketing of this handgun and others like it impose liability on Defendants in that the

---

[1] ORS 28.200 provides:

"The Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court or the highest appellate court or the intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceedings before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court and the intermediate appellate courts of this state."

*See generally* ORS 28.200 to 28.230.

harm suffered by Plaintiff, Irv Burkett, resulted from the abnormal danger and risk inherent in the nature of the activity itself. An ultrahazardous activity such as the design, manufacture and/or marketing of this handgun and similar guns should not be undertaken without Defendants assuming the consequences of their actions. Specifically, this activity should be determined to be ultrahazardous and abnormally dangerous in that the design, manufacture and/or marketing of this handgun and similar handguns involve the following:

(A) A high degree of risk of harm to individual health and safety;

(B) The likelihood that the harm will be great, i.e., serious bodily harm or death;

(C) Unavoidable risk of harm even with the exercise of all reasonable care by Defendants;

(D) An activity which is not a matter of common usage;

(E) An activity which is inappropriate to the place where it is carried on;

(F) An activity whose value to the community is out-weighed by its dangerous attributes.

"The above listed factors, and combinations thereof, render Defendants' design, manufacture and marketing of the 'freedom arms handgun' ultrahazardous and abnormally dangerous. These factors were the producing cause of the Plaintiff's injuries for which the Defendants are jointly and severally liable."

The defendants, Freedom Arms, Inc., and North American Arms, moved to dismiss the amended complaint on the ground that the complaint failed to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. After oral argument, the federal district court declined to rule on the defendants' motions to dismiss and certified the following two questions of Oregon law to this court:

"(1) Does the manufacture, sale and marketing of a small, easily concealable handgun constitute an abnormally dangerous activity giving rise to the manufacturer's strict liability under Oregon law?

"(2) If the answer to the above question is in the affirmative, does the criminal misuse of the handgun, resulting in injury to an innocent victim, constitute a superseding cause relieving the manufacturer of liability?"

Because we answer the first question in the negative and hold that, under Oregon law, the manufacture, sale and marketing[2] of a small, easily concealable handgun does not constitute an abnormally dangerous activity, we do not reach the second question.

Plaintiffs initially brought their action on theories of strict products liability and negligence. The federal district court granted both defendants' FRCP 12(b)(6) motions to dismiss the complaint for failure to state a claim under either theory. Plaintiffs attempt to circumvent the problems encountered with the products liability and negligence theories by alleging in the amended complaint that the design, manufacture and sale of small, easily concealable handguns to the public is an abnormally dangerous activity[3] subjecting the defendants to strict liability for all injuries caused by the product.

Under section 519 of the Restatement (Second) of Torts (1965), "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." The factors to be considered in determining whether the activity is abnormally dangerous are set forth in section 520:

"(a)  existence of a high degree of risk of some harm to the person, land or chattels of others;

"(b)  likelihood that the harm that results from it will be great;

"(c)  inability to eliminate the risk by the exercise of reasonable care;

---

[2] The district court phrased the certified questions in terms of "manufacture, sale and marketing." Plaintiffs' amended complaint alleges that the *design,* manufacture and marketing of small, easily concealable handguns is an abnormally dangerous activity. Our answer to the first certified question encompasses the design of such handguns as well.

[3] Plaintiffs' amended complaint alleges that the activity of design, manufacture and marketing of handguns is "ultrahazardous" and "abnormally dangerous." The Restatement (Second) of Torts (1965), changed the phrasing from "ultrahazardous" to "abnormally dangerous." On this point, *see Koos v. Roth,* 293 Or 670, 676-77, 652 P2d 1255 (1982). Because the allegations of plaintiffs' amended complaint follow section 520 of the Restatement (Second) of Torts, we do not interpret plaintiffs' use of the term "ultrahazardous" as an attempt to allege a theory under the first Restatement.

"(d)    extent to which the activity is not a matter of common usage;

"(e)    inappropriateness of the activity to the place where it is carried on; and

"(f)    extent to which its value to the community is outweighed by its dangerous attributes."

■    Although this court has never explicitly relied upon the six Restatement factors in determining whether a given activity is abnormally dangerous, *see generally Koos v. Roth,* 293 Or 670, 652 P2d 1255 (1982), we have long recognized that strict liability may be incurred for damage caused by activities characterized by the court as abnormally dangerous or ultra-hazardous, *see, e.g., Koos v. Roth, supra* (field burning); *Bella v. Aurora Air, Inc.,* 279 Or 13, 566 P2d 489 (1977) (aerial herbicide spraying); *McLane v. Northwest Natural Gas,* 255 Or 324, 467 P2d 635 (1970) (natural gas storage); *Bedell v. Goulter,* 199 Or 344, 261 P2d 842 (1953) (dynamite blasting).

■    Plaintiffs seek to bring the design, manufacture and sale of a nondefective product within the analytical parameters of these prior decisions, particularly relying upon *Bella v. Aurora Air, Inc., supra,* and *Bedell v. Goulter, supra.* While our prior decisions indicate that under certain circumstances the use or storage of substances, whether these substances are inherently benign or dangerous, may constitute an abnormally dangerous activity, it is clear that the danger inherent in the activity itself is the basis for imposing strict liability for the resulting harm.

If plaintiffs were claiming that the *use* of a small, easily concealable handgun is an abnormally dangerous activity, perhaps this case would arguably fall within the analytical parameters of Oregon law, because the danger would inhere in the activity itself. However, plaintiffs' attempt to impose strict liability for engaging in an abnormally dangerous activity on the manufacturer of a nondefective product, where there is no contention that the activity of manufacturing and marketing apart from the subsequent use or misuse of the product is inherently dangerous, is unprecedented in Oregon and in all other common law jurisdictions that have considered this question. *See Perkins v. F.I.E. Corp.,* 762 F2d 1250, 1265 n 43 (5th Cir 1985), and cases cited therein; *Martin v. Harrington and Richardson, Inc.,* 743 F2d 1200 (7th Cir 1984);

*Riordan v. International Armament Corp.*, 132 Ill App 3d 642, 477 NE2d 1293 (1985). *Richman v. Charter Arms Corporation*, 571 F Supp 192 (ED La 1983), the only reported case which supported plaintiffs' position that their amended complaint states a valid claim for relief, was reversed by the Fifth Circuit Court of Appeals in the consolidated case of *Perkins v. F.I.E. Corp., supra.* The specific reason for the reversal was that the marketing of handguns to the general public falls far beyond the boundaries of the Louisiana doctrine of ultrahazardous activities, a doctrine grounded in the Louisiana Civil Code and not the Restatement (Second) of Torts §§ 519-20. In a footnote, Judge John Minor Wisdom of the Fifth Circuit commented:

> "Even if §§ 519-20 of the Restatement (Second) of Torts were applicable, it appears that the defendants could not be held liable under those sections. The comments to § 519 demonstrate that the marketing of a consumer product is not within the purview of the kinds of activities that section was meant to encompass. In particular, comment d states that 'liability arises out of the abnormal danger of the activity *itself,* and the risk that it creates, of harm to those *in the vicinity*'. Thus, § 519 encompasses activities that are dangerous in and of themselves and that can *directly* cause harm to those 'in the vicinity', even though conducted with 'the utmost care to prevent the harm'. The storage of dynamite in a city is one paradigm given in comment e. The marketing of a handgun is not dangerous in and of itself, and when injury occurs, it is not the direct result of the sale itself, but rather the result of actions taken by a third party.
>
> "Nor is the marketing of handguns properly classified as abnormally dangerous under the factors of § 520. * * *" *Perkings*, 762 F2d at 1265 n 43 (emphasis in original; citations omitted).

Judge Wisdom then undertook a discussion of each of the six Restatement factors, demonstrating the importance of the distinction between *use* of handguns and *marketing* of handguns.

■ As mentioned, this court does not necessarily adhere to the six factors listed in section 520 when determining whether an activity qualifies as abnormally dangerous. While some of the factors may be relevant to the inquiry, our focus has been on "assessing abnormal hazards by their potential

for harm of exceptional magnitude or probability despite the utmost care." *Koos v. Roth, supra,* 293 Or at 683.

■ In *Koos,* we concluded that the activity of field burning was abnormally dangerous, creating an "effectively uncontrollable danger of serious harm beyond the ordinary risks associated with common uses of fire that are readily avoided with due care." 293 Or at 685. Under the facts admitted as true for the purpose of these motions to dismiss, we hold as a matter of law that the design, manufacture and marketing of handguns is not an abnormally dangerous activity. Only by focusing the inquiry on the risk inherent in the subsequent use of the product does a specter of danger in the defendants' activity arise. But to hold one who designs, manufactures and sells a nondefective product strictly liable for the sole reason that the subsequent use or misuse of the nondefective product carries a grave risk of harm which cannot be avoided by due care would amount essentially to the imposition of enterprise liability.[4] This court has rejected enterprise liability standing alone as a justification for the imposition of strict liability. *Cf. Tillman v. Vance Equipment Company,* 286 Or 747, 753, 596 P2d 1299 (1979).

Therefore, the answer to the federal district court's first query is that the design, manufacture, sale and marketing of a small, easily concealable handgun does not constitute an abnormally dangerous activity giving rise to the manufacturer's strict liability under Oregon law. Because we so hold, we do not reach the second question.

---

[4] The theory of enterprise liability is summarized in *Wights v. Staff Jennings,* 241 Or 301, 405 P2d 624 (1965):

"* * * [T]he thesis is that a loss resulting from the use of defendant's [product] 'is a casualty produced by the hazards of defendant's enterprise, so that the risk of loss is properly a risk of that enterprise,' a view commonly described as the theory of enterprise liability. * * *" 241 Or at 307-08 (footnotes omitted), quoting James, *General Products—Should Manufacturers be Liable Without Negligence?,* 24 Tenn L Rev 923, 926 (1957).

*See Tillman v. Vance Equipment Company,* 286 Or 747, 753, 596 P2d 1299 (1979); *Wilson v. Piper Aircraft Corporation,* 282 Or 61, 83 n 5, 577 P2d 1322 (1978).