[No. 20404–1–I. Division One. January 8, 1988.]

NORMA KNOTT, as *Guardian, Appellant,* v. LIBERTY JEWELRY AND LOAN, INC., ET AL, *Respondents.*

*Lembhard G. Howell,* for appellant.

*William R. Hickman, Pamela A. Okano, Joseph Mc-Carthy,* and *Reed, McClure, Moceri, Thonn & Moriarty,* for respondent Liberty Jewelry and Loan.

*Megan Graves* and *Merrick, Hofstedt & Lindsey,* for respondent Taniguchi.

*Preston Niemi* and *Kenneth Shear,* for respondents Gesellschaft and R.G. Industries.

*Joel Wright* and *Lee, Smart, Cook, Martin & Patterson,* for respondent RSR Wholesale Guns.

RINGOLD, A.C.J.—The plaintiff, Norma Knott, guardian ad litem for Douglas Knott, appeals from the trial court's dismissal of all claims on defendants' motions to dismiss and motions for summary judgment. We affirm.

On July 3, 1984, Joseph Bates made application to purchase a .22 caliber handgun (Saturday night special)[1] from Liberty Jewelry and Loan. Liberty completed the application and forwarded it to the Seattle Police Department which, on July 6, found that Bates was not prohibited from purchasing a handgun. On July 13, Bates returned to Liberty, completed required federal forms, and picked up the gun. The handgun was manufactured by Roehm Gesellschaft, assembled by R.G. Industries and distributed by RSR Wholesale Guns.

On July 31, 1984, Bates shot Douglas Knott in a stairwell at the Publix Hotel, where both men resided. Bates then returned to his room and committed suicide. Knott suffered severe injuries and is now a ventilator–dependent quadriplegic. Knott's mother, as guardian ad litem for Douglas Knott, commenced this action.

Knott claims negligence on the part of the hotel's proprietor, and raises product liability and tort claims against the vendor, distributor, assembler and manufacturer of Bates' handgun. The trial court granted defendants' motions for dismissal and for summary judgment. This appeal followed.

## CLAIMS AGAINST HOTEL OPERATOR

The plaintiff first assigns error to the trial court's dismissal of the negligence claim against Hashi Taniguchi, the proprietor and manager of the Publix Hotel. Knott alleged in her complaint that Taniguchi knew or should have

---

[1]*Kelley v. R.G. Indus.,* 304 Md. 124, 497 A.2d 1143, 1153–54, 44 A.L.R.4th 563 (1985), defines a Saturday night special as: "generally characterized by short barrels, light weight, easy concealability, low cost, use of cheap quality materials, poor manufacture, inaccuracy and unreliability."

known of Bates' violent nature, and failed to fulfill his duty to warn Knott of Bates' dangerous propensities or to protect him from injury. The trial court found no facts on the record suggesting that Taniguchi knew or had reason to know Bates posed a danger to other hotel guests. Without this knowledge, the trial court concluded, Taniguchi had no legal duty to warn other guests of the danger presented by Bates or to prevent Bates from carrying his weapon.

Knott's evidence concerning Taniguchi's alleged knowledge of Bates' dangerous propensities consisted of the affidavit of an investigator and deposition testimony from another resident of the Publix Hotel. Each alleged Taniguchi knew on the day of the shooting that Bates was carrying a concealed gun. Knott also offered evidence showing other hotel residents found Bates to be "strange." According to Knott, Bates recently had glared at and intentionally bumped into other hotel guests, had reached into a bag as if to grab a gun, and had verbally threatened other guests. The plaintiff offered no evidence any guest reported these acts to Taniguchi or his employees or that Taniguchi or any of his employees ever witnessed Bates behaving in a belligerent or threatening manner. Taniguchi testified at his deposition that he thought Bates to be a very quiet man.

After considering the evidence, the trial court held that even if Taniguchi knew Bates owned and carried a gun, that knowledge alone could not be found to have imparted knowledge of Bates' dangerous character and propensity for violence:

> I don't see any way that Mr. Taniguchi could possibly have foreseen that this would happen, and I just do not see a duty on his part to warn Mr. Knott or the other tenants.

A motion for summary judgment under CR 56(c) should be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. The court must consider all of the facts submitted and reasonable inferences therefrom in

the light most favorable to the nonmoving party. The court should grant the motion only if, from all of the evidence, reasonable persons could reach but one conclusion. In reviewing the trial court's decision, this court engages in the same inquiry as did the trial court. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Mark v. Williams,* 45 Wn. App. 182, 186, 724 P.2d 428 (1986).

■ The essential elements of actionable negligence are: (1) the existence of a duty owed to the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause between the claimed breach and resulting injury. *E.g., Hansen v. Washington Natural Gas Co.,* 95 Wn.2d 773, 776, 632 P.2d 504 (1981). Foreseeability determines the extent and scope of duty. *Rikstad v. Holmberg,* 76 Wn.2d 265, 268, 456 P.2d 355 (1969). The threshold determination of whether a defendant owes a duty to the plaintiff is a question of law. *Pedroza v. Bryant,* 101 Wn.2d 226, 228, 236, 677 P.2d 166 (1984).

■ The general rule followed in Washington is that an innkeeper owes to his guests the duty to exercise reasonable care to protect them from injury at the hands of a fellow guest. *Miller v. Staton,* 58 Wn.2d 879, 883, 365 P.2d 333 (1961). The scope of this duty is limited to the range of danger foreseeable to the innkeeper. *See Bernethy v. Walt Failor's, Inc.,* 97 Wn.2d 929, 653 P.2d 280 (1982).

Reviewing the evidence before the trial court, we find Taniguchi had no knowledge of facts which should have alerted him to Bates' dangerous propensities and that the shooting of Knott was not reasonably foreseeable. Taniguchi was therefore under no legal duty to warn or protect guests of the Publix Hotel. We hold the trial court acted properly in granting Taniguchi's motion for summary judgment.

### MANUFACTURERS AND SELLERS OF HANDGUNS

Knott next asks us to adopt a legal theory holding manufacturers, assemblers, distributors and sellers of Saturday night specials such as that purchased by Bates liable in tort

to one intentionally shot by the purchaser of a handgun. Knott reasons this liability is warranted because these particular guns have no legitimate purpose and impose a staggering cost upon society through their criminal misuse. *See, e.g.,* Turley, *Manufacturers' and Suppliers' Liability to Handgun Victims,* 10 N. Ky. L. Rev. 41 (1982). Knott seeks imposition of liability under one of the following theories: (1) because Saturday night specials are defective, victims of their criminal misuse should be permitted to pursue product liability claims under RCW 7.72; (2) by failing to surpass statutory marketing guidelines, the distributor and seller negligently distributed the weapon; (3) the mere distribution or sale of Saturday night specials is an ultrahazardous activity; and (4) this court should adopt a new common law cause of action permitting compensation of innocent victims of the criminal use of Saturday night specials. We hold Knott has stated no cause of action against Roehm, R.G. Industries, RSR Wholesale Industries and Liberty Jewelry and Loan and affirm the dismissals of these defendants.

## A. Product Liability

The product liability act, RCW 7.72, governs claims or actions brought for harm caused by the manufacture or marketing of the product in issue. Claims subject to the act include claims or actions previously based on:

> Strict liability in tort; negligence; breach of . . . warranty; breach of . . . a duty to warn or instruct, whether negligent or innocent; misrepresentation, concealment, or nondisclosure, whether negligent or innocent; or other claim or action previously based on any other substantive legal theory except fraud, intentionally caused harm or a claim . . . under the consumer protection act . . .

RCW 7.72.010(4).

Knott theorizes that Saturday night specials are by their nature of unreasonably unsafe design. This theory ignores the statutory definition of what constitutes a reasonably unsafe design:

A product is not reasonably safe as designed, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, outweighed the burden on the manufacturer to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product.

RCW 7.72.030(1)(a). It is difficult to comprehend how any operable handgun, no matter how different from the one that paralyzed Knott, "would have prevented those harms". Knott's product liability action does not fit within the provisions of RCW 7.72 and was properly dismissed by the trial court.

## B. Negligence

Knott next contends the distributor and seller of Bates' handgun were negligent in the marketing and sale of Saturday night specials. She reasons that because the guns allegedly have no legitimate purpose and are often used in criminal activity, RSR and Liberty knew or should have known these guns would be used to harm innocent parties. Knott argues that given this knowledge, RSR Wholesale Guns was under a duty to warn retailers of the "dangerous propensities of the Saturday Night Specials" and to provide retailers with safe marketing guidelines, and that Liberty was under a duty to go beyond statutory minimums in handgun marketing in order to prevent their sale to criminals. Liberty and RSR properly reply that the Legislature set the marketing guidelines for handguns and specifically preempted all further regulation of firearms, and that they fully complied with all applicable laws. RCW 9.41.290.

Courts in other jurisdictions have rejected contentions similar to Knott's. *See Trespalacios v. Valor Corp.*, 486 So. 2d 649 (Fla. Dist. Ct. App. 1986); *Riordan v. International Armament Corp.*, 132 Ill. App. 3d 642, 477 N.E.2d 1293 (1985); *Linton v. Smith & Wesson*, 127 Ill. App. 3d 676, 469

N.E.2d 339 (1984). In *Riordan,* the court held that no common law duty exists upon the manufacturer of a nondefective handgun to control the distribution of that product to the general public, as distribution was intended for the general public "who presumably can recognize the dangerous consequences in the use of handguns and can assume responsibility for their actions." *Riordan,* at 646. We affirm the trial court's dismissal of Knott's negligent distribution claim.

## C. Ultrahazardous Activity

Knott also contends strict liability should be imposed upon the distributor and seller as the distribution and sale of Saturday night specials is an ultrahazardous activity. The defendants properly reply there is no inherent risk attending to the sale of a gun.

■ Washington follows the doctrine of strict liability for conducting an ultrahazardous activity as is set out in the Restatement (Second) of Torts §§ 519–20.[2] *See New Meadows Holding Co. v. Washington Water Power Co.,* 102 Wn.2d 495, 500, 687 P.2d 212 (1984). Under this doctrine, a party is strictly liable for injuries caused by its activity due to the high risk inherent in the activity in question. In

---

[2]Restatement (Second) of Torts § 519:

"(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

"(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous."

Restatement (Second) of Torts § 520:

"In determining whether an activity is abnormally dangerous, the following factors are to be considered:

"(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

"(b) likelihood that the harm that results from it will be great;

"(c) inability to eliminate the risk by the exercise of reasonable care;

"(d) extent to which the activity is not a matter of common usage;

"(e) inappropriateness of the activity to the place where it is carried on; and

"(f) extent to which its value to the community is outweighed by its dangerous attributes."

accord with other jurisdictions, we hold that the manufacture, distribution or sale of a handgun is not a high–risk, ultrahazardous activity. *See Coulson v. DeAngelo,* 493 So. 2d 98 (Fla. Dist. Ct. App. 1986); *Riordan v. International Armament Corp., supra; Strickland v. Fowler,* 499 So. 2d 199 (La. Ct. App. 1986); *Kelley v. R.G. Indus.,* 304 Md. 124, 497 A.2d 1143, 44 A.L.R.4th 563 (1985); *Burkett v. Freedom Arms, Inc.,* 299 Or. 551, 704 P.2d 118 (1985); *Robertson v. Grogan Inv. Co.,* 710 S.W.2d 678 (Tex. Ct. App. 1986).

### D. Common Law Action

Alternatively, Knott urges this court to follow the Maryland Court of Appeals in *Kelley v. R.G. Indus., supra,* and adopt a new common law cause of action for injuries sustained from the criminal use of certain handguns. The *Kelley* court reasoned that, because the Maryland legislature allowed the purchase of handguns only for "good and substantial reasons," guns not designed to serve valid purposes are contrary to public policy. The court then found that guns determined by a jury to be Saturday night specials serve no legitimate purposes and held that manufacturers and sellers of these guns could be held strictly liable to innocent gunshot victims of their criminal use. The court's "no legitimate purpose" determination was made after weighing the common use of Saturday night specials in furthering criminal activity against the cost this use places on society. This court, in the appropriate exercise of its powers cannot follow *Kelley.*

In *Baughn v. Honda Motor Co.,* 107 Wn.2d 127, 727 P.2d 655 (1986), the Washington Supreme Court rejected use of a risk–utility analysis for product liability claims. The plaintiffs in *Baughn* argued that mini–trail bikes are too dangerous to be sold, no matter how well they are manufactured. *Baughn,* at 146. The court disagreed, noting that:

> Plaintiffs have simply not shown that there was "something wrong" with the mini–trail bike or that the

warnings were inadequate. . . . Many products used . . . may be capable of causing injury, but that alone does not mean they should be removed from the market . . .

*Baughn,* at 147.

The *Baughn* court quoted with approval from *DeRosa v. Remington Arms Co.,* 509 F. Supp. 762 (E.D.N.Y. 1981), in which the court held that there must be "something wrong" with a particular weapon in order for liability to attach:

> Guns may kill; knives may maim; liquor may cause alcoholism; but the mere fact of injury does not entitle the [person injured] to recover . . . there must be something wrong with the product, and if nothing is wrong there will be no liability.

*Baughn,* at 147, quoting *DeRosa,* at 769, quoting A. Murphy & K. Santagata, *Analyzing Product Liability* 4 (1979).

Other courts considering liability for the sale of guns have also required a defect in the weapon for liability to attach. *See, e.g., Perkins v. F.I.E. Corp.,* 762 F.2d 1250 (5th Cir. 1985) (applying Louisiana law); *Martin v. Harrington & Richardson, Inc.,* 743 F.2d 1200 (7th Cir. 1984) (applying Illinois law); *Coulson v. DeAngelo, supra; Trespalacios v. Valor Corp., supra; Hulsman v. Hemmeter Dev. Corp.,* 65 Hawaii 58, 647 P.2d 713 (1982); *Riordan v. International Armament Corp., supra; Burkett v. Freedom Arms, Inc.,* 299 Or. 551, 704 P.2d 118 (1985); *see also Novak v. Piggly Wiggly Puget Sound Co.,* 22 Wn. App. 407, 591 P.2d 791 (1979) (BB gun held not unreasonably dangerous).

We affirm the trial court's refusal to adopt the proposed common law cause of action. Under the doctrine of stare decisis we are bound by *Baughn,* which requires a showing that the injury–causing product was defective before liability can be imposed. We must emphasize that this court cannot establish a new rule of law upon an issue contrary to the holding of the Supreme Court of our state. Moreover, establishing a new cause of action regarding handguns is properly the domain of the Legislature, which has preempted the field of regulating handguns. RCW 9.41.290.

We affirm the orders granting summary judgment and dismissing the plaintiff's claims.

COLEMAN and WEBSTER, JJ., concur.

Review denied by Supreme Court May 4, 1988.