[No. 21762–3–I.   Division One.   May 22, 1989.]

FARMERS INSURANCE COMPANY OF WASHINGTON, *Respondent*, v. JOHN W. HEMBREE, *as Guardian*, ET AL, *Defendants*, ROBERT N. WATTS, *as Guardian*, ET AL, *Appellants*.

*Robert C. Van Siclen, Patricia A. Raichle,* and *Smythe & Van Siclen,* for appellants.

*Patricia C. Fetterly* and *Davies Pearson,* for respondent.

COLEMAN, C.J.—Appellants appeal from an order granting summary judgment in favor of Farmers Insurance Company. We affirm.

In October 1985, John and Ruth Hembree agreed to baby–sit Robert and Judy Watts' children, B and S. The agreement was that B and S would stay at the Hembrees' house. John and Ruth Hembree's three minor sons, John, Jr., Andrew, and Kenneth, sexually assaulted B and S while they were staying at the Hembrees' house.

On February 3, 1987, the Watts filed a complaint for personal injuries against John and Ruth Hembree and their three sons. Among other things the complaint alleged that John and Ruth Hembree were negligent in failing to properly care for the Watts' children.

The Hembrees had a homeowner's insurance policy with Farmers Insurance Company. On December 9, 1987, Farmers brought a complaint against its insureds, John and Ruth Hembree and their sons, and the Watts, seeking a declaratory judgment that Farmers had no duty to defend or indemnify John and Ruth Hembree or their children for the personal injury action filed against them by the Watts.

On February 11, 1988, the trial court granted Farmers' motion for summary judgment, holding that it had no duty to defend or indemnify the Hembrees. This appeal followed.

Summary judgment is proper where the pleadings, depositions, affidavits, and admissions on file show that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985); *Knott v. Liberty Jewelry & Loan, Inc.,* 50 Wn. App. 267, 270, 748 P.2d 661, *review denied,* 110 Wn.2d 1024 (1988). Making the same inquiry as the trial court, the appellate court must view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party; summary judgment should be granted only if reasonable persons could reach but one conclusion from all of the evidence. *Knott,* at 270–71.

Appellants argue that Farmers has a duty to defend and indemnify John and Ruth Hembree against this cause of action. Appellants contend that this duty arises out of the Hembrees' personal liability coverage which provides that

[w]e shall pay all damages from an accident which an insured is legally liable to pay because of bodily injury or property damage covered by this policy.

At our expense we shall defend an insured against any covered claim or suit. We may investigate and settle any

claim or suit that we consider proper. We shall not defend or make any payments after we have paid the policy limits for the accident.

Farmers argues that the plain terms of the policy exclude coverage to John and Ruth Hembree. The exclusionary provision included in the policy provided that

We do not cover bodily injury or property damage: . . . [a]rising as a result of intentional acts of an insured.

The policy provides the following definitions:

Bodily injury means bodily harm, sickness or disease, including care, loss of services and resulting death.

. . .

Insured means you and the following persons if permanent residents of your household:

a. your relatives.

b. anyone under the age of 21.

The parties have conceded that Farmers has no duty to defend or indemnify John, Jr., Andrew, or Kenneth Hembree because their acts were intentional. Farmers argues that the language in the policy which excludes coverage for "bodily injury . . . arising as a result of intentional acts of an insured" also excludes coverage for claims in the underlying action brought against John and Ruth Hembree for negligence. Farmers argues that because the claimed bodily injury to the Watts children arose indisputably as a result of the intentional acts of "an insured" (*i.e.,* John, Jr., Andrew, and Kenneth Hembree), the exclusion is applicable and there is no coverage.

Appellants argue that Farmers is attempting to deny coverage to its own insureds on the basis of linguistic sleight of hand. Appellants argue that the cause of action arose out of the negligence of John and Ruth Hembree, not the intentional acts of their sons, and that therefore the policy does not preclude coverage to John and Ruth Hembree. Appellants rely upon *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81,* 20 Wn. App. 261, 579 P.2d 1015 (1978) and *Federated Am. Ins. Co. v. Strong,* 102 Wn.2d 665, 689

P.2d 68 (1984), to support their position. However, these cases are distinguishable.

In *Unigard,* an 11–year–old boy broke into a school and started a fire in a trash can. The fire spread, causing extensive damage to the school. The school district sued the boy and his parents, alleging that the parents had negligently failed to supervise and control him. *Unigard,* at 262–63. The family's insurance company sought a declaratory judgment that it had no duty to defend or indemnify the parents or the boy. The trial court relied upon a policy exclusion which provided: "This policy does not apply . . . to bodily injury or property damage which is either expected or intended from the standpoint of the insured." (Italics omitted.) *Unigard,* at 262. On appeal, the court held that, as to the boy, the fire damage was the expected result of an intentional act, so the insurance company had no duty to defend or indemnify him. However, the *Unigard* court held that the insurance company had a duty to defend and indemnify the parents. The *Unigard* court reasoned as follows:

> The policy extends defense and indemnification to "the Insured," and it excludes from coverage intentional acts resulting in injury or damage "expected or intended from the standpoint of the insured." The parties concede the boy and the Hensleys are all "insureds" under the policy. In such instances, where coverage and exclusion is defined in terms of "the insured," the courts have uniformly considered the contract between the insurer and several insureds to be separable, rather than joint, *i.e.,* there are separate contracts with each of the insureds. The result is that an excluded act of one insured does not bar coverage for additional insureds who have not engaged in the excluded conduct.

(Footnote omitted.) *Unigard,* at 265–66.

In *Strong,* Lisa Strong, while driving her husband's car, intentionally collided with two other automobiles. *Strong,* at 666. The Strongs' insurance policy contained the following exclusionary clause:

Exclusions: This policy does not apply under the Liability Section:

. . .

> (b) to bodily injury or property damage caused intentionally by or at the direction of the insured; . . .

*Strong,* at 668. Since Lisa intentionally collided with the other vehicles, she was excluded from liability coverage under the policy. The issue on appeal was whether the policy exclusion applied to Lisa's husband, Clyde Strong. *Strong,* at 668.

Our State Supreme Court, relying on *Unigard,* held that the plain terms of the policy entitled Clyde Strong to liability coverage. *Strong,* at 669. The court, applying *Unigard,* reasoned that

> Liability coverage is provided to "the insured." Coverage is excluded for injury or damage caused intentionally by "the insured." Since coverage and exclusion have been defined in terms of the "the insured," there are separate contracts between FAIC and its insureds, and the excluded act of Lisa Strong does not bar coverage for Clyde Strong.

*Strong,* at 669.

In *Unigard* and *Strong,* unlike in the present case, coverage and exclusion are expressed in terms of "*the* insured." (Italics ours.) The language in the exclusion clauses in *Unigard* and *Strong* is significantly different from the provision in this case. In the instant case, coverage and exclusion are expressed in terms of *an* insured. Here, the exclusion is not restricted to intentional acts of the particular insured sought to be held liable, but broadly excludes coverage for all intentionally caused injury or damage by *an* insured, which includes anyone insured under the policy. *See Travelers Ins. Co. v. Blanchard,* 431 So. 2d 913 (La. Ct. App. 1983).

This conclusion is strengthened by *U.S.F.&G. Ins. Co. v. Brannan,* 22 Wn. App. 341, 589 P.2d 817 (1979). In that case, John Brannan shot both of his business associates, killing one and wounding the other. At the time, John and

Mary Brannan had a homeowner's policy with U.S.F.&G. Insurance Company. *Brannan,* at 343. Anticipating a claim against it, U.S.F.&G. brought a declaratory judgment action seeking an adjudication that there was no duty to defend either John or Mary Brannan under the policy. The insurance policy excluded coverage for "bodily injury or property damage arising out of business pursuits of *any Insured* except activities therein which are ordinarily incident to non–business pursuits." (Italics ours.) *Brannan,* at 345. The case was submitted to a jury which returned a verdict exonerating the carrier. *Brannan,* at 343. On appeal, the court held:

> The instant case concerns a different coverage exclusion than that involved in *Unigard.* Here, the policy does not apply to "damage arising out of business pursuits of *any Insured*" (italics ours); thus, it does not matter that the event did not arise out of Mary Brannan's business. The policy provides no coverage if the business pursuits of *any* of the separate insureds gave rise to the damage. Thus, *Unigard*'s holding, that this type of insurance policy is severable with respect to the various named insureds, becomes irrelevant to this issue.

*Brannan,* at 348.

In *Brannan,* as in the instant case, the exclusion clause is much broader than the exclusion clause in *Unigard.* Here, the policy does not apply to "bodily injury or property damage: [a]rising as a result of intentional acts of an insured." Thus, it does not matter that the event did not arise out of the intentional acts of John and Ruth Hembree. The policy provides no coverage if the intentional acts of *an* insured gave rise to the injury or damage. Therefore, as in *Brannan,* the rationale in *Unigard* becomes irrelevant to the issue here.

This court recently addressed a similar issue in *Farmers Ins. Co. v. Edie,* 52 Wn. App. 411, 763 P.2d 454 (1988). In *Edie,* Farmers brought a complaint against its insureds, Ronald and Judy Edie, seeking a declaratory judgment that the Edies were not covered under their insurance policy for a physical and sexual assault suit filed against them by

their daughter, April. The policy excluded coverage for bodily injury "'[a]rising as a result of intentional acts of *an* insured[.]'" (Italics ours.) *Edie,* at 412. The trial court held that the Edies were not covered.

The *Edie* court, citing *Brannan,* held that the trial court was correct in determining that the Edies were not covered for the suit by their insurance. The *Edie* court reasoned that the policy excluded coverage for bodily injury "'[a]rising as a result of intentional acts of an insured,' and April's suit was based on the intentional acts of 'an' insured, Ronald." *Edie,* at 412.

The exclusion in the policy in the instant case is identical to the exclusion clause in *Edie.* As in *Edie,* John and Ruth Hembree's suit was based on the intentional acts of "an" insured, John, Jr., Andrew, and Kenneth Hembree. Thus, the trial court in the instant case was correct in determining that John and Ruth Hembree were not covered for the personal action brought against them by the Watts.

Appellants' argument that coverage is not excluded because the injury was caused by the negligent supervision of John and Ruth Hembree is also without merit. The general rule is that "alleged claims which are clearly not covered by the policy relieve the insurer of its right and duty to defend." *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 486, 687 P.2d 1139 (1984). Here, the claim is clearly not covered by the policy, regardless of the fact that one of the causes of action is negligence. Therefore, Farmers is relieved of its right and duty to defend John and Ruth Hembree.

██ Appellants also argue that Farmers should not be allowed to avoid coverage because certain provisions of the policy are ambiguous. In construing the language of an insurance contract, this court should examine the contract as a whole and if, on the face of the insurance contract two reasonable and fair interpretations are possible, an ambiguity exists. *Emerson,* at 484. If a clause in an insurance policy is ambiguous, it will be construed in a manner that is

most favorable to the insured regardless of the insurer's intention. *Emerson,* at 484.

Appellants contend that the policy is ambiguous because the extended coverage clause (*i.e.,* the provision defining the term "insured" to mean "you" and "your relatives" and "anyone under the age of 21" if permanent residents of the insured's home) creates an ambiguity as to the extent of protection. Appellants argue that this expanded coverage clause should not work to their detriment. In support of their argument, appellants rely on *Walker v. Lumbermen's Mut. Cas. Co.,* 491 S.W.2d 696 (Tex. Civ. App. 1973), *Arenson v. National Auto. & Cas. Ins. Co.,* 45 Cal. 2d 81, 286 P.2d 816 (1955), and *Morgan v. Greater N.Y. Taxpayers Mut. Ins. Ass'n,* 305 N.Y. 243, 112 N.E.2d 273, 275 (1953). Appellants argue that these cases rely on the existence of an expanded coverage clause to support their conclusion that coverage should not be denied to the insured who did not commit the intentional act. However, these cases are inapposite. In these cases, the policy coverage and exclusion clause language is identical to the policy language in *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81,* 20 Wn. App. 261, 579 P.2d 1015 (1978) and *Federated Am. Ins. Co. v. Strong,* 102 Wn.2d 665, 689 P.2d 68 (1984). The courts in *Walker, Arenson,* and *Morgan* found, as did the courts in *Unigard* and *Strong,* that where the coverage and exclusion clause are couched in terms of "the insured," separate contracts existed with each of the insureds. Thus, *Walker, Arenson,* and *Morgan* are distinguishable for the same reasons that *Unigard* and *Strong* are. (See discussion above.)

The language in the policy in the present case is not ambiguous. The contract when read as a whole is not capable of two reasonable and fair interpretations. The coverage clause clearly and unambiguously designates who is covered and clearly provides that Farmers will pay all damages arising from an accident which *an* insured is legally liable to pay because of bodily injury covered by the policy. The policy also clearly and unambiguously excludes coverage for

bodily injury arising as a result of intentional acts of *an* insured.

█ Finally, we must determine whether the exclusion clause in this case violates public policy.

"The term 'public policy', . . . embraces all acts or contracts which tend clearly to injure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel."

*Goodier v. Hamilton,* 172 Wash. 60, 62, 19 P.2d 392 (1933) (quoting 6 R.C.L. 712). Such a showing has not been made. The exclusion clause does not violate public policy.

Moreover, this court should not invoke public policy to override an otherwise proper contract. *Emerson,* at 483. Case precedent and the language of the Farmers insurance policy do not require coverage for John and Ruth Hembree in this case.

We affirm the judgment of the trial court.

WEBSTER and WINSOR, JJ., concur.

Review denied at 113 Wn.2d 1011 (1989).