Argued and submitted October 30, 2006, reversed and remanded April 4, 2007

Harold A. ELLIS,
*Plaintiff-Respondent,*

*v.*

FERRELLGAS, L. P.,
and Ferrellgas, Inc.,
*Defendants-Appellants,*

*and*

Joseph WESTBY,
*Defendant.*

Jackson County Circuit Court
033066L3; A127989

156 P3d 136

Paul S. White argued the cause for appellants. With him on the briefs were John R. Fletcher, R. Daniel Lindahl, and Bullivant Houser Bailey, PC.

Dennis H. Black argued the cause for respondent. With him on the brief was Black, Chapman, Webber, Stevens, Petersen & Lundblade.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Wollheim, Judge.

EDMONDS, P. J.

---

* Brewer, C. J., *vice* Ceniceros, S. J.

## EDMONDS, P. J.

Plaintiff was injured in a propane gas explosion and filed a civil action for damages based on negligence and strict liability against defendants, who supplied and serviced the propane tank involved in the explosion. Defendants moved for summary judgment, and plaintiff cross-moved for partial summary judgment on the strict liability claim. The trial court granted plaintiff's motion on the ground that, based on *McLane v. Northwest Natural Gas Co.*, 255 Or 324, 467 P2d 635 (1970), defendants' activity in furnishing the propane constituted an abnormally dangerous activity as a matter of law, resulting in strict liability. The case went to trial on the issue of damages, and plaintiff filed a motion *in limine* to strike defendants' comparative fault defense, which the trial court granted. Defendants appeal from the judgment for plaintiff, arguing that the trial court erred in granting plaintiff's summary judgment motion on the ground that they were engaged in an abnormally dangerous activity, and in striking their comparative fault defense. We reverse.

Plaintiff worked at Truss-Span lumberyard in Central Point. Part of plaintiff's job duties included driving a propane-powered forklift, which he had to refuel about once a day. The lumberyard had a 499-gallon propane tank that was installed and serviced by defendants. The tank had a dispensing hose that was coiled on the ground behind a crash post when not in use. Plaintiff testified that, on the day of the accident, he was backing the forklift to the propane tank to refuel, and that the next thing that he remembered was lying on the ground after an explosion. In his complaint, plaintiff alleged, with respect to his strict liability claim, that "[a]t all times material herein, defendants furnished for plaintiff's use propane gas at the aforementioned propane gas facility. Defendants' conduct was the proximate cause of damage to plaintiff."

Defendants' motion for summary judgment was accompanied by an affidavit from an expert witness stating that, in the expert's opinion, the accident was caused when plaintiff backed onto or ran over the propane hose with the forklift, causing a small leak. The expert opined that propane

escaped from the leak until it found an ignition source, which was most likely the forklift, and that "[t]here was a sustained fire that eventually caused the hose to sever. Once the leak became large enough, the excess flow valve on the dispensing equipment activated." The expert also averred that, in his professional opinion, defendants "did nothing to fall below the industry standards and/or regulations which caused this accident. This accident could not have occurred in the absence of someone's negligence. Propane would not simply have escaped for no reason."

In response, plaintiff filed a cross-motion for partial summary judgment on his strict liability claim. In support of the motion, plaintiff submitted his own expert witness testimony. The expert stated that,

"Based upon my knowledge of propane, it is a volatile and hazardous flammable substance. Propane explosions and consequent fires, even from small cylinders, can cause severe injuries. Contrary to the defense motion for summary judgment which calls the 499 gallon propane dispensing tank small * * *, it is my opinion that this size tank has the capability to render huge damage if ignited. For example, had the 499 gallon propane tank involved in this case exploded, it would have caused a fire ball several hundred feet in diameter. Catastrophic injury and property damage would be the result in such an event. As it was, even with only a relatively small amount of the tank's contents igniting because of a rupture in the dispensing hose, extensive property damage occurred to an adjacent structure and [plaintiff] was blown off of his fork lift and severely burned.

"* * * Based upon my knowledge of propane and propane storage equipment, it is possible that the accident in question before this court could have happened without anyone's negligence."

As stated above, the trial court granted plaintiff's motion, concluding that, under *McLane*, defendants' activity in furnishing the propane constituted an abnormally dangerous activity as a matter of law, resulting in strict liability. The case was then set for trial on the issue of damages. The day before trial, plaintiff filed a motion *in limine* and an alternative motion to strike defendants' comparative fault defense on the strict liability claim. The trial court granted

plaintiff's motion. Thereafter, the jury awarded damages to plaintiff. The trial court ordered that a limited money judgment be entered in conformance with the jury's verdict, and held that plaintiff's negligence claim would not be tried until "the court of appeals renders a decision on the judgment entered in the ultrahazardous activity case." This appeal followed.

■     In their first and second assignments of error, defendants argue that the trial court erred in denying their motion for summary judgment and granting plaintiff's motion, and "by holding as a matter of law that the propane tank and dispensing hose constituted 'engaging in an abnormally dangerous activity.' " Defendants assert that "[t]his case involves a relatively small 499-gallon propane tank with a dispensing hose. * * * The tank and hose do not satisfy the Oregon Supreme Court's stated criteria for what is an abnormally dangerous activity."

■     We review an order granting partial summary judgment for errors of law. ORCP 47 C;[1] *Andres v. American Standard Ins. Co.*, 205 Or App 419, 423, 134 P3d 1061 (2006). Where, as here, cross-motions for summary judgment were made, and defendants assign error to both the denial of their motion and the granting of plaintiff's motion, both are subject to review. *Cochran v. Connell*, 53 Or App 933, 939-40, 632 P2d 1385, *rev den*, 292 Or 109 (1981). Each party that moved for summary judgment has the burden of demonstrating that there are no issues of material fact and that the movant is entitled to judgment as a matter of law. *McKee v. Gilbert*, 62

---

[1] ORCP 47 C provides, in part:

"The court shall enter judgment for the moving party if the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. The adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial. The adverse party may satisfy the burden of producing evidence with an affidavit or a declaration under section E of this rule. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Or App 310, 321, 661 P2d 97 (1983). We review the record for each motion in the light most favorable to the party opposing that motion. *Yartzoff v. Democrat-Herald Publishing Co.*, 281 Or 651, 655, 576 P2d 356 (1978).

Whether an activity is ultrahazardous or abnormally dangerous is a question of law for the court. *Loe et ux v. Lenhard et al*, 227 Or 242, 249, 362 P2d 312 (1961). Although never expressly adopted in Oregon, *see Burkett v. Freedom Arms Inc.*, 299 Or 551, 704 P2d 118 (1985), among the factors to be considered in determining whether an activity is abnormally dangerous are factors set forth in section 520 of the *Restatement (Second) of Torts* (1965):

> "(a)   existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> "(b)   likelihood that the harm that results from it will be great;
>
> "(c)   inability to eliminate the risk by the exercise of reasonable care;
>
> "(d)   extent to which the activity is not a matter of common usage;
>
> "(e)   inappropriateness of the activity to the place where it is carried on; and
>
> "(f)   extent to which its value to the community is outweighed by its dangerous attributes."

As the Supreme Court stated in *Burkett*, Oregon courts

> "[do] not necessarily adhere to the six factors listed in section 520 when determining whether an activity qualifies as abnormally dangerous. While some of the factors may be relevant to the inquiry, our focus has been on 'assessing abnormal hazards by their potential for harm of exceptional magnitude or probability despite the utmost care.' "

*Burkett*, 299 Or at 557-58 (quoting *Koos v. Roth*, 293 Or 670, 683, 652 P2d 1255 (1982)).

In *McLane*, the Supreme Court found the storage of large amounts of natural gas in a populated area to be abnormally dangerous. *McLane*, 255 Or at 328. The court explained that

"the principal factor which brings the activity within the abnormally dangerous classification is not so much the frequency of miscarriage (although this may be important) as it is the creation of an additional risk to others which cannot be alleviated and which arises from the extraordinary, exceptional, or abnormal nature of the activity."

*Id.* at 329. Also, in *Koos*, 293 Or at 682, the court clarified that

"a dangerous activity is not an abnormal hazard, even though its intrinsic dangers cannot be prevented, if it is a 'common usage.' That term has been extended beyond its original meaning of widespread and accepted individual practice to embrace also essential service activities like the distribution of gas or electricity, *see McLane,* * * *. In other words, a dangerous activity is not extraordinarily so if nearly everyone routinely does it or expects to have it done for him."

Two sources of information, legal and factual, are relevant to answering the question of whether an activity constitutes an abnormally dangerous activity. *Speer & Sons Nursery v. Duyck*, 92 Or App 674, 676-77, 759 P2d 1133 (1988). For sources of legal information, we look to statutes and regulations that reflect policy and value judgments regarding an activity by the legislature or administrative agencies. *Id.* at 677. Here, plaintiff points to administrative rules regarding the storage and handling of liquid petroleum gases, and to ORS 480.420, which requires the State Fire Marshal to "make, promulgate and enforce regulations" for, among other things, the storage and handling of liquid petroleum gases. However, those enactments contain no indication on their face whether the legislature viewed the storage of propane in the amount involved in this case as an abnormally dangerous or ultrahazardous activity.

The second source of information focuses on the facts relating to the activity in issue. *Id.* at 677. The Supreme Court has emphasized that "it is the duty of the court to decide as a matter of law whether a given activity, *in a given factual setting*, is or is not extra hazardous." *Loe et ux*, 227 Or at 249 (emphasis added). "The 'factual setting' can, in turn, come from several sources: the parties' pleadings, briefs, and

admissions, evidence taken at or before trial, or judicial notice." *Speer*, 92 Or App at 677 (citations omitted).

In light of the above guidelines, we turn to the summary judgment record in this case, which consists of the pleadings, the affidavits by expert witnesses, and portions of depositions of plaintiff and other witnesses. Defendants' expert opined that the accident was caused when plaintiff ran over the hose, and that the explosion would not have occurred in the absence of negligence. Plaintiff's expert opined that the accident could have occurred without anyone's negligence. Although defendants alleged that the tank involved here was the same type of tank used at gas stations, convenience stores, construction sites, and home improvement stores, and that many homes used similar tanks, there is no evidence in the record on that issue.[2] Plaintiff countered that defendants' assertions are not evidence and asked that the trial court take judicial notice of data obtained from the United States Department of Labor, Occupational Safety and Health Administration website concerning injuries sustained due to propane explosions and fire. The trial court did not rule on the record on plaintiff's request.

Instead, the trial court ruled that "the activity alleged in the complaint is an 'abnormally dangerous' activity" but did not make more specific findings. The allegation under the strict liability claim in the complaint stated that "defendants furnished for plaintiff's use propane gas * * *." For purposes of this opinion, we assume that the trial court found that *storage* of propane in the tank under the circumstances of this case was the abnormally dangerous activity. Therefore, we look to the evidence in the summary judgment record in support of that conclusion of law and inquire whether the evidence is sufficient to permit the necessary analysis under the proper legal test to determine whether that activity is an abnormally dangerous activity.

---

[2] *See* ORCP 47 D, which provides, in part:

"When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of that party's pleading, but the adverse party's response, by affidavits, declarations or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial."

We conclude that the summary judgment evidentiary record is inadequate for the trial court or us to make a legal determination that defendants' activity was abnormally dangerous. For instance, the evidentiary record does not address the extent to which this particular activity is common, or any inappropriateness of the activity to the place where it occurred, or the extent, if any, to which the value of the activity to the community is outweighed by its dangerous attributes. Because of the paucity of the record before it, the trial court should have denied both plaintiff's and defendants' motions.

Moreover, the trial court's reliance on *McLane* was misplaced because of its factual differences from this case. In *McLane*, the question was whether the plaintiff's complaint stated a claim for an abnormally dangerous activity. The plaintiff alleged that the defendant "maintained * * * storage units wherein it collected and controlled large amounts of natural gas." Comparing the defendants' activity to the storage of explosives, the *McLane* court held that the storage of natural gas in "large quantities" is sufficiently volatile to be considered an abnormally dangerous activity. *McLane*, 255 Or at 328. The court specifically declined to consider whether the distribution of natural gas in amounts of common usage should be classified as abnormally dangerous. *Id.* at 331. Here, the record reveals no information about whether the storage of propane in a 499-gallon container is common.[3]

---

[3] Other jurisdictions have found that the use and storage of propane is not an abnormally dangerous activity. *See Apodaca v. AAA Gas Company*, 134 NM 77, 88, 73 P3d 215, 226 (NM App 2003) (repair of propane trucks did not amount to ultrahazardous activity, despite high likelihood of great harm resulting from propane explosion, where reasonable precautions could have reasonably reduced risk of explosion); *Searle v. Suburban Propane*, 700 NYS2d 588, 591, 263 AD2d 335, 339 (2000) (use of propane not ultrahazardous activity where it enjoys widespread use as a commercial, consumer and household product and reasonable precautions can be taken to prevent explosion); *Travelers Ins. Co. v. Chrysler Corp.*, 845 F Supp 1122, 1125 (MDNC 1994) (propane is commonly used and because reasonable care will eliminate the risk of serious harm, a product using propane fuel is not ultrahazardous). *But see Zero Wholesale Gas Co., Inc. v. Stroud*, 264 Ark 27, 31, 571 SW2d 74, 76-77 (1978) (jury could find that delivery of propane to propane storage yard was an ultrahazardous activity); *National Steel Service Center, Inc. v. Gibbons*, 319 NW2d 269, 270 (Iowa 1982) (accepting apparent concession by defendant that transportation of liquid propane by train is an abnormally dangerous activity). However, based on the record before us, we are unable to meaningfully address the issue.

Defendants' other assignment of error asserts that the trial court erred when it struck defendants' affirmative defense of contributory fault based on the allegation that plaintiff ran over the dispensing hose with his forklift. Plaintiff responds that ordinary negligence is not properly considered as a defense to liability for an abnormally dangerous activity unless the plaintiff unreasonably subjected himself to a risk of harm. We conclude that this is not a case in which we can decide the issue framed by the parties because it is dependent on the state of an evidentiary record yet to be developed.

Reversed and remanded.