Argued and submitted October 15, 2014, vacated and remanded
February 18, 2016

## TRI-COUNTY METROPOLITAN TRANSPORTATION DISTRICT OF OREGON
(TriMet), a municipal corporation of
the State of Oregon,
*Plaintiff-Respondent,*

*v.*

## AMALGAMATED TRANSIT UNION LOCAL 757,
a labor organization,
*Defendant-Appellant.*

Multnomah County Circuit Court
121215684; A154561

368 P3d 50

Aruna A. Masih argued the cause for appellant. With her on the briefs was Gregory A. Hartman.

Keith M. Garza argued the cause for respondent. With him on the brief was Erik Van Hagen.

Before Lagesen, Presiding Judge, and Hadlock, Chief Judge, and Wollheim, Senior Judge.

LAGESEN, P. J.

**LAGESEN, P. J.**

This appeal arises from a declaratory judgment action under ORS 28.010. Plaintiff, the Tri-County Metropolitan Transportation District of Oregon (TriMet), sought a declaration that the collective bargaining sessions between TriMet's negotiating team and the bargaining unit for TriMet employees, defendant, the Amalgamated Transit Union (ATU), are not subject to Oregon's Public Meetings Law, ORS 192.610 to 192.695. On cross-motions for summary judgment, the trial court ruled in favor of TriMet, concluding that the undisputed facts established as a matter of law that the bargaining sessions between TriMet's negotiating team and ATU were not "meetings" as that term is defined in the Public Meetings Law and, therefore, were not within the scope of the Public Meetings Law. Although we agree with the trial court that the undisputed facts establish as a matter of law that the sessions between TriMet's negotiating team and ATU are not "meetings" for purposes of the Public Meetings Law, we vacate and remand to the trial court for further consideration, in the light of our recent decision in *Handy v. Lane County*, 274 Or App 644, 362 P3d 867 (2015), *rev allowed*, 358 Or 550 (2016). In the light of that decision, we are unable to conclude as a matter of law that the Public Meetings Law does not apply to those sessions simply because—as the trial court correctly concluded—those sessions are not "meetings."

## I. BACKGROUND

A. *The Public Meetings Law*

As this case centers on the application of Oregon's Public Meetings Law to the bargaining sessions between TriMet and ATU, we start by providing an overview of that law. The purpose of the Public Meetings Law is to ensure government transparency in Oregon:

> "The Oregon form of government requires an informed public aware of the deliberations and decisions of governing bodies and the information upon which such decisions were made. It is the intent of ORS 192.610 to ORS 192.690 that decisions of governing bodies be arrived at openly."

ORS 192.620. To that end, the law regulates the decision-making process of "governing bod[ies]" of "public bod[ies]." A "public body" is any governmental body in Oregon, including a "committee or subcommittee or advisory group or any other agency" of a larger governmental body. ORS 192.610(4).[1] A "governing body" consists of the "members of any public body which consists of two or more members, with the authority to make decisions for or recommendations to a public body on policy or administration." ORS 192.610(3).

The law ensures transparency in government primarily through two complementary mechanisms. Both mechanisms are contained in ORS 192.630. First, ORS 192.630(1) requires that any "meeting" of a governing body of a public body be open to the public, unless the topic of the meeting is one that the legislature has said may be addressed in an "executive session" or the meeting is of the sort that is exempted from the Public Meetings Law under ORS 192.690.[2] ORS 192.630(1); ORS 192.660; ORS 192.690. A "meeting" is a "convening of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter." ORS 192.610(5). An "executive session" is "any meeting or part of a meeting of a governing body which is closed to certain persons for deliberation on certain matters." ORS 192.610(2). ORS 192.660 regulates governing bodies' use of executive sessions and identifies the subjects that a governing body may consider in executive session.

Second, ORS 192.630(2) restricts the ability of the members of a governing body to meet outside of the context of a formal "meeting" in order to deliberate or make a decision: "A quorum of a governing body may not meet in private for the purpose of deciding on or deliberating toward a decision on any matter except as otherwise provided by ORS 192.610 to 192.690." ORS 192.630(2). The net effect of those

---

[1] ORS 192.610(4) states:

"'Public body' means the state, any regional council, county, city or district, or any municipal or public corporation, or any board, department, commission, council, bureau, committee or subcommittee or advisory group or any other agency thereof."

[2] ORS 192.690 exempts certain meetings of specified governing bodies from the provisions of the Public Meetings Law.

two mechanisms is that a quorum of a governing body cannot meet to deliberate or make a decision in private unless ORS 192.660 authorizes it to do so in an executive session of a meeting or if ORS 192.690 otherwise excludes the governing body from the application of the Public Meetings Law. *See Handy,* 274 Or App at 659 ("The legislature was not content to require that 'meetings' be made open to the public; rather, to achieve the statutory purpose, the legislature felt the need to regulate the conduct of public officials in less formal settings.").

## B.   *This Dispute*

Although the record evidences some significant factual disputes—the main one relating to whether TriMet's negotiating team qualifies as a "governing body" for purposes of the Public Meetings Law—those disputes, except as otherwise indicated, do not bear on the legal issues presented on appeal. The facts that pertain to those issues are largely undisputed.

TriMet is a mass transit district and municipal corporation of the State of Oregon. ORS 267.010 - 267.430. TriMet is governed by a board of directors (the board). ORS 267.120. A General Manager administers all of its affairs. ORS 267.140. Under the Oregon Public Employer Collective Bargaining Act (PECBA), ORS 243.650 to 243.782, TriMet is a public employer required to engage in collective bargaining with the exclusive representative of a bargaining unit of its employees. ORS 243.650(20); ORS 243.672(1)(e). ATU is the exclusive representative of a bargaining unit of TriMet employees and is statutorily required to engage in collective bargaining with TriMet. ORS 243.650(8); ORS 243.672(2)(b).

When called upon to collectively bargain with ATU, TriMet conducts its negotiations with ATU through an eight-member negotiating team. The team is headed by TriMet's Executive Director of Labor Relations and Human Resources, Stedman. Stedman selects the other members of the team. The members of that team have the authority to negotiate and enter into a tentative agreement with ATU's bargaining team. There is no minimum number

of members of the bargaining team that must be present before the bargaining team can engage in negotiations or take any action.

Once the negotiating teams for both ATU and TriMet reach a tentative agreement, the TriMet negotiating team waits for ATU to ratify the agreement. If ATU ratifies the tentative agreement, then the TriMet negotiating team submits the agreement and all agreed upon resolutions to TriMet's General Manager. The General Manager then relays the agreement to the TriMet board. The board then makes the final decision whether to ratify the agreement.

This dispute arose when, in contemplation of the expiration of the parties' existing collective bargaining agreement, TriMet and ATU began discussing the process for bargaining a successor agreement. Eleven days before the start of the first bargaining session proposed by TriMet, ATU notified TriMet that it "does *not* consent to negotiations being conducted in executive session[,]" and, therefore, under ORS 192.660(3),[3] "TriMet has a duty pursuant to Oregon public meetings law *** to notify the public as well as those who have expressed interest, as to the date, time and location of the negotiations." (Emphasis in original.) TriMet responded that, under its interpretation of the Public Meetings Law, "[n]o negotiation session will be a public 'meeting' ***." As a result of that response, ATU declared that "[u]nless TriMet provides written notice of its intention to abide by Oregon law and conduct negotiations in the open meeting format *** the Union will not participate." TriMet refused to provide such notice.

Because the parties could not agree on the correct interpretation of the Public Meetings Law, TriMet filed this action asking for a "judgment declaring that collective bargaining sessions between TriMet's negotiating team and the ATU are not subject to ORS 192.610 *et seq*, governing public meetings[,]" as well as a declaration "that because

---

[3] ORS 192.660(3) provides:

"Labor negotiations shall be conducted in open meetings unless negotiators for both sides request that negotiations be conducted in executive session. Labor negotiations conducted in executive session are not subject to the notification requirements of ORS 192.640."

collective bargaining sessions between ATU and TriMet's negotiating team are not public meetings, any actions taken in those meetings are not subject to challenge under ORS 192.680." In answer to the complaint, ATU denied that TriMet was entitled to the declarations that it sought, and alleged that ATU was entitled to a declaration that ORS 192.660(3) required TriMet to conduct collective bargaining sessions with ATU in open meetings and an injunction barring TriMet from excluding the public and the media from the bargaining sessions.

The parties filed cross-motions for summary judgment. The trial court denied the motions. In so doing, it rejected ATU's argument that ORS 192.660(3), as a matter of law, required TriMet to conduct labor negotiations in a public meeting, even if those negotiations did not otherwise qualify as a "meeting" as that term is defined in the Public Meetings Law. The court then concluded that there were factual disputes as to whether the bargaining sessions qualified as "meetings" as that term is defined in the Public Meetings Law, as well as factual disputes as to whether TriMet's negotiating team was a "governing body," as that term is defined in the Public Meetings Law, and, thus, subject to the Public Meetings Law.

The parties then filed a second round of summary judgment motions. In support of its second motion, TriMet submitted an affidavit from Stedman in which Stedman averred that "[t]here is no minimum number of members of the bargaining team that must be present before the bargaining team can engage in negotiations or take any action." TriMet then argued that, even if its negotiating team was a governing body for purposes of the Public Meetings Law, the team did not require a quorum to be present in order to conduct the bargaining sessions with ATU and, as a result, those sessions did not qualify as "meetings" under the Public Meetings Law. In response, ATU argued that TriMet's negotiating team and ATU's negotiating team together constituted a "governing body" and that a quorum was required for that combined body's bargaining sessions, in the light of the fact that the PECBA requires that at least one representative of management and one representative from labor be present in order to bargain.

The trial court granted TriMet's renewed motion for summary judgment, concluding that the evidence established that the parties' bargaining sessions were "not within the scope of the public meetings law." It then entered judgment in favor of TriMet. The judgment declares that "Collective bargaining sessions between TriMet's negotiating team and the ATU bargaining team are not 'meetings' subject to ORS 192.610 *et seq.* governing public meetings."

ATU appeals, reiterating the arguments that it made to the trial court: (1) that ORS 192.660(3) requires public bodies to conduct labor negotiations in public meetings, regardless of whether such negotiations are conducted in a manner that qualifies as a "meeting" under the Public Meetings Law; and (2) even if ORS 192.660(3) applies only when labor negotiations are conducted in the context of a "meeting," the parties' bargaining sessions qualify as "meetings" because the parties' negotiating teams, when combined, form a "governing body" that cannot bargain without the presence of a quorum of that combined team. In addition, ATU argues that TriMet's choice not to impose a quorum requirement in connection with its negotiating team's bargaining sessions should not mean that TriMet "can unilaterally evade application of the Public Meetings Law."

## II. STANDARD OF REVIEW

This appeal arises from a general judgment that resulted from cross-motions for summary judgment; ATU assigns error both to the grant of Tri-Met's motion and to the denial of its own motion. In this posture, both rulings are subject to review. *Ellis v. Ferrellgas, L. P.*, 211 Or App 648, 652, 156 P3d 136 (2007). Under those circumstances, "the record on summary judgment consists of documents submitted in support of and in opposition to both motions." *Citibank South Dakota v. Santoro*, 210 Or App 344, 347, 150 P3d 429 (2006), *rev den*, 342 Or 473 (2007). We review each motion to determine "whether there are any disputed issues of material fact and whether either party was entitled to judgment as a matter of law." *Vision Realty, Inc. v. Kohler*, 214 Or App 220, 222, 164 P3d 330 (2007).

## III. ANALYSIS

A. *Does ORS 192.660(3) impose an obligation on TriMet to conduct labor negotiations in open meetings?*

We first consider whether ORS 192.660(3) required TriMet to conduct labor negotiations in open meetings, regardless of whether those negotiations are conducted by a "governing body" or in a form that constitutes a "meeting." That provision states:

> "Labor negotiations shall be conducted in open meetings unless negotiators for both sides request that negotiations be conducted in executive session. Labor negotiations conducted in executive session are not subject to the notification requirements of ORS 192.640."

We acknowledge that the text of the provision—when divorced from its context—can be read as ATU reads it: that is, to impose an obligation on public bodies to conduct their labor negotiations in an open meeting, unless both sides agree otherwise. However, statutory "text should not be read in isolation but must be considered in context." *Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004). Here, the context of the provision precludes us from adopting ATU's interpretation of ORS 192.660(3).

For one, ORS 192.660(3) is not a stand-alone provision. Instead, it is part of ORS 192.660. ORS 192.660 is a statute that regulates governing bodies' use of executive sessions, which, as noted, are closed meetings by statutory definition. ORS 192.610(2). That context strongly suggests that, in enacting ORS 192.660(3), the legislature's intention simply was to specify that, when a governing body conducts labor negotiations during a meeting, that part of the meeting must be open unless both sides agree that the negotiations can, instead, be conducted in executive session. Had the legislature intended to enact a statute requiring that all public bodies conduct all labor negotiations in open meetings, even if the negotiations did not otherwise fall within the scope of the Public Meetings Law—something that would be a significant expansion of the Public Meetings Law—we think it unlikely that the legislature would have buried that provision within the statute regulating the use of executive sessions.

Additionally, ORS 192.660(3) is part of the Public Meetings Law—a law that does not regulate public bodies generally but, instead, regulates the conduct of governing bodies and, in particular, the manner in which governing bodies must conduct their meetings. That, too, indicates that the legislature intended for ORS 192.660(3) to apply to labor negotiations only when the requirements of the Public Meetings Law otherwise apply to those negotiations because they are being conducted by a governing body in a meeting.

Our decision in *SW Ore. Pub. Co. v. SW Ore. Comm. Coll.*, 28 Or App 383, 559 P2d 1289, *rev den*, 279 Or 1 (1977), holds as much. There, we considered whether ORS 192.660(3) applied to labor negotiations conducted on behalf of the school district by a retained negotiator. First, we determined that "the Public Meetings Law in general and the sections of the law concerning 'executive sessions' specifically are applicable only to 'governing bodies'" as defined by ORS 192.610. *Id.* at 386. We based that conclusion solely on the text of ORS 192.630(1), which establishes the general requirement imposed by the public meetings law: "All *meetings of the governing body of a public body* shall be open to the public and all persons shall be permitted to attend any meeting except as otherwise provided by ORS 192.610 to ORS 192.690."[4] (Emphasis added.) Second, we concluded that, because "[a] retained labor negotiator is neither a member of a public body nor a governing body," as defined by ORS 192.610, ORS 192.660(3) "has no applicability to negotiations conducted by a retained negotiator." *Id.* In other words, we concluded that ORS 192.660(3) does not apply to labor negotiations that, as a factual matter, are conducted in a way that does not fall within the scope of the Public Meetings Law. Although, as ATU points out, ORS 192.660(3) has been amended since we decided *SW*

---

[4] At the time we decided *SW Ore. Pub. Co.*, a prior version of ORS 192.660(3) was in effect, which stated that "'[l]abor negotiations may be conducted in executive session if either side of the negotiators requests closed meetings,'" 28 Or App at 385 (quoting ORS 192.660(3) (1977)). However, because we based our reasoning in that case solely on the text of ORS 192.630(1), which remains unchanged, the difference in statutory wording does not affect the applicability of that decision to the case at hand.

*Ore. Pub. Co.*, those amendments do not undercut the rationale for the decision: ORS 192.660(3) applies to labor negotiations only when those negotiations are conducted in the context of a "meeting" under the Public Meetings Law, and does not apply when the negotiations are conducted outside of a "meeting."[5]

Accordingly, the trial court was correct to conclude that ORS 192.660(3) did not entitle ATU to judgment as a matter of law that TriMet is required to conduct its collective bargaining sessions with ATU in the context of open meetings.

B. *Do the undisputed facts establish, as a matter of law, that TriMet's bargaining sessions with ATU are not "meetings"?*

We next consider ATU's argument that the trial court erred when it failed to conclude, as a matter of law, that TriMet's bargaining sessions with ATU qualify as "meetings" under the Public Meetings Law.

As noted, a "meeting," as defined by ORS 192.610(5), is a "convening of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter." As we have explained, a "convening" of a governing body that does not require a quorum for the purpose of deliberating or making a decision is not a "meeting" for purposes of the Public Meetings Law. *Harris v. Nordquist*, 96 Or App 19, 24, 771 P2d 637 (1989) (gathering of a quorum of governing body at a restaurant was not a "meeting" because no quorum was required for that type of gathering); *Oregonian Publishing Co. v. Board of Parole*, 95 Or App 501, 506, 769 P2d 795 (1989) (explaining that the words "for which a quorum is required in order to make a decision or to deliberate toward a decision" in the definition of "meeting" "modify or characterize the kind of quorum that is required to make a 'convening' a 'meeting'").

---

[5] We have reviewed the legislative history of ORS 192.660(3) as originally enacted and as amended and have not found it helpful; some parts appear to support ATU's position, whereas other parts appear to support TriMet's position.

Here, the uncontroverted evidence in the record is that the "convening" of TriMet's negotiating team to bargain with ATU is not a "convening" for which a quorum is required. Specifically, TriMet has, as a factual matter, set up its negotiating team so that it can bargain with ATU regardless of how many members of that team show up to participate. As a result, as the trial court concluded, the negotiating team's bargaining sessions, as a matter of law, are not "meetings" of that team under the Public Meetings Law.

On appeal, ATU does not appear to dispute that, if TriMet's negotiating team is the relevant "governing body" to consider, then the negotiating team's bargaining sessions are not meetings. In other words, ATU does not argue that there are factual disputes as to whether TriMet's negotiating team requires a quorum for convening a bargaining session with ATU. Instead, ATU argues, as it did below, that TriMet's negotiating team and ATU's negotiating team together constitute an "advisory group" under ORS 192.610(4), which, in turn, qualifies as a "governing body" under ORS 192.610(3), because it consists of two or more members of that advisory group that makes recommendations regarding a collective bargaining agreement to TriMet. ATU argues further that, under the PECBA, *that* combined group must have a quorum—one person from each team—present in order to convene a bargaining session, thereby making the bargaining session a meeting.

We reject that argument. We see nothing in the record that would permit the conclusion that the combined negotiating teams constitute a single, unitary "advisory group." On the contrary, the record affirmatively compels a contrary conclusion. The record reflects that the two teams are selected by different entities, and that the two teams represent distinct interests in the bargaining process: the negotiating team represents TriMet as a public employer, and ATU's negotiating team represents TriMet employees. Under those circumstances, there is no basis to view the separate negotiating teams as a single governing body. As a result, ATU has not demonstrated any error in the trial court's conclusion that the parties' bargaining sessions, as a matter of law, are not "meetings" under ORS 192.610(5).

C. *Do the undisputed facts establish, as a matter of law, that the Public Meetings Law does not apply to TriMet's bargaining sessions with ATU?*

Finally, we consider ATU's argument that the fact that TriMet's negotiating team does not have a quorum requirement for its sessions with ATU does not mean that, as a matter of law, TriMet's negotiating sessions with ATU are exempt from the application of the Public Meetings Law. On this point, we agree with ATU.

Our recent decision in *Handy* clarifies that the Public Meetings Law applies not only to formal "meetings" of governing bodies (that is, formal "convening[s] *** for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter[,]" ORS 192.610(5)), but also to circumstances in which a quorum of a governing body "meets" to deliberate toward or make a decision outside of the context of a "meeting." 274 Or App at 658-62 (discussing how the Public Meetings Law regulates both formal meetings of governing bodies, as well as informal gatherings of the members of a governing body for the purposes of deliberating toward or making a decision). Here, we have concluded that the undisputed facts establish that there is no quorum *required* for the convening of TriMet's negotiating team's bargaining sessions with ATU, and that those sessions, therefore, are not "meetings." For that reason, the trial correctly entered a declaration to that effect.

However, after the trial court decided this case, we decided *Handy*, which has provided further clarification as to the operation of the Public Meetings Law. In the light of that clarification, it is now apparent to us that the trial court's declaration that the parties' bargaining sessions are not "meetings" neither ends the analysis nor fully resolves the controversy between the parties. TriMet's complaint seeks a judgment declaring that the provisions of the Public Meetings Law have no application to the parties' bargaining sessions at all. But, as *Handy* now establishes, that those bargaining sessions are not "meetings" does not necessarily mean that the Public Meetings Law does not apply to them. And on the summary judgment record as it stands,

it is possible that the Public Meetings Law may have some application to the parties' bargaining sessions.

Specifically, although TriMet's negotiating team does not require the presence of a quorum in order to convene its bargaining sessions with ATU, that does not mean that TriMet's negotiating team is a body without a quorum and, thus, exempt from the restrictions of the Public Meetings Law. On the contrary, if TriMet's negotiating team is, in fact, a governing body—and TriMet concedes on appeal that it might be[6]—that governing body necessarily has a quorum. A quorum is simply "the number of the members of an organized body of persons * * * that when duly assembled is legally competent to transact business in the absence of the other members: a usu. specified number of members (as an absolute majority) in the absence of which an organized body cannot act legally * * *." *Webster's Third New Int'l Dictionary* 1868 (unabridged ed 2002).[7] If TriMet's negotiating team is, in fact, a governing body, that number exists.[8] That, in turn, gives rise to the possibility that ORS 192.630(2) may apply to the parties' bargaining sessions in some circumstances. As *Handy* explains, even if those sessions are not "meetings" because there is no requirement that a quorum be present to convene them, the sessions may nonetheless be subject to the limitations contained in ORS 192.630(2).[9] 274 Or App at 657-62. Consequently, on this

---

[6] Specifically, TriMet acknowledges that the current summary judgment record does not establish as a matter of law that TriMet's bargaining team is not a "governing body" as that term is defined in the Public Meetings Law.

[7] The legislature did not define the term "quorum" in the Public Meetings Law. For that reason, we give the term its ordinary meaning.

[8] Under Oregon law, the default quorum of a governing body is a majority. A governing body, by definition, is a body that has been granted "the authority to make decisions for or recommendations to a public body on policy or administration." ORS 192.610(3). Under ORS 174.130, if a body consists of three or more members, only a majority of that body may exercise the authority granted to it, "unless expressly otherwise provided by law." *See People for Ethical Treatment v. Inst. Animal Care*, 312 Or 95, 103, 817 P2d 1299 (1991) (acknowledging that ORS 174.130 "imposes a quorum requirement on [the defendant's] authority to approve grant applications").

[9] For example, if TriMet's negotiating team is a "governing body" that has the statutory default quorum of a majority, then, as an eight-member body, the negotiating team's quorum is five. Although the negotiating team does not have a quorum requirement for conducting its bargaining session with ATU, if five or more members of the negotiating team were to "meet" to participate in a bargaining session, it is possible that the team would be in violation of ORS 192.630(2).

record, we are unable to conclude that TriMet is entitled to judgment as a matter of law that the Public Meetings Law has no application to those sessions, as TriMet requested in its complaint. For that reason, we vacate the trial court's judgment and remand for further proceedings consistent with this opinion.

Vacated and remanded.