484 February 15, 2018 No. 8

IN THE SUPREME COURT OF THE
STATE OF OREGON

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON
(TriMet), a municipal corporation
of the State of Oregon,
*Petitioner on Review,*

*v.*

AMALGAMATED TRANSIT UNION  LOCAL 757,
a labor organization,
*Respondent on Review.*

(CC C121215684; CA A154561; SC S064006)

On review from the Court of Appeals.*

Argued and submitted June 14, 2017.

Keith M. Garza, Law Office of Keith M. Garza, Oak Grove, argued the cause and filed the briefs for the petitioner on review. Also on the briefs was Erik Van Hagen, Portland.

Aruna A. Masih, Bennett Hartman Morris & Kaplan LLP, Portland, argued the cause and filed the brief for the respondent on review. Also on the brief was Gregory A. Hartman, Portland.

Todd A. Lyon, Fisher & Phillips LLP, Portland, filed the brief for *amicus curiae* Oregon Public Employer Labor Relations Association.

Jeffrey P. Chicoine, Miller Nash Graham & Dunn LLP, Portland, filed the brief for *amicus curiae* Oregon School Boards Association. Also on the brief was Jollee F. Patterson, Portland.

Jacquilyn Saito-Moore, Washington County Counsel, Hillsboro, filed the brief for *amici curiae* Association of Oregon Counties and League of Oregon Cities. Also on the brief was Kimberly A. Stuart, Hillsboro.

_____

* Appeal from Multnomah County Circuit Court Leslie M. Roberts, Judge. 276 Or App 513, 368 P3d 50 (2016).

Before Balmer, Chief Justice, and Kistler, Walters, Nakamoto, Flynn, Duncan, and Nelson, Justices.**

FLYNN, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

** Brewer, J., retired June 30, 2017, and did not participate in the decision of this case. Landau, J., retired December 31, 2017, and did not participate in the decision of this case.

**FLYNN, J.**

Plaintiff, Tri-County Metropolitan Transportation District (TriMet), brought this action for declaratory relief, seeking a declaration that planned, future collective bargaining sessions between TriMet's bargaining team and the bargaining team for defendant Amalgamated Transit Union Local 757 (ATU) will not be "meetings" subject to the open meetings requirements of Oregon's Public Meetings Law, ORS 192.610 to ORS 192.695. ATU opposed the declaration, and the parties filed cross-motions for summary judgment. The trial court agreed with TriMet and granted its motion, but the Court of Appeals vacated and remanded. *TriMet v. Amalgamated Transit Union Local 757*, 276 Or App 513, 368 P3d 50 (2016). The Court of Appeals reasoned that, even if the bargaining sessions are not "meetings" as that term is defined in the Public Meetings Law, ORS 192.610(5), when the TriMet team participates in the sessions, it may be subject to the prohibition in ORS 192.630(2) that, generally:

> "A quorum of a governing body may not meet in private for the purpose of deciding on or deliberating toward a decision on any matter[.]"

This court allowed review to consider whether the Court of Appeals correctly construed ORS 192.630(2). We conclude that the Court of Appeals' construction of that statute is correct—that it is possible for a "quorum of a governing body" to "meet" in violation of ORS 192.630(2) even if there is no "meeting" subject to ORS 192.630(1). We also conclude that TriMet failed to establish, on this summary judgment record, that no "quorum" of the TriMet team will "meet" during the negotiations; thus, TriMet failed to establish as a matter of law that the bargaining sessions at issue will not be subject to ORS 192.630(2).[1] Finally, we consider, but reject, ATU's proposal that another provision

---

[1] The pertinent subsections of ORS 192.630 provide:

"(1) All meetings of the governing body of a public body shall be open to the public and all persons shall be permitted to attend any meeting except as otherwise provided by ORS 192.610 to 192.690.

"(2) A quorum of a governing body may not meet in private for the purpose of deciding on or deliberating toward a decision on any matter except as otherwise provided by ORS 192.610 to 192.690."

of the Public Meetings Law, ORS 192.660(3), requires that all bargaining sessions of a public body be conducted in an "open meeting" unless both parties consent to private meetings. Accordingly, we affirm the decision of the Court of Appeals and reverse and remand the judgment of the circuit court.

## I.  BACKGROUND

A.  *Factual Context*

TriMet is a mass transit district and municipal corporation that operates in the Portland metropolitan area. ORS 267.010 - 267.430. As a public employer, TriMet is required by the Public Employer Collective Bargaining Act (PECBA) to engage in collective bargaining with the exclusive representative of a bargaining unit of its employees, here ATU. In 2012, shortly before their collective bargaining agreement was set to expire, ATU notified TriMet that it wished to open negotiations for a new collective bargaining agreement. TriMet's general manager had designated TriMet's Executive Director of Labor Relations and Human Resources, Stedman, to lead its negotiating team. Stedman, in turn, had chosen seven other TriMet executives to be members of the team.

After the parties agreed to conduct three bargaining sessions, ATU advised TriMet that it expected the bargaining sessions to be open to the public pursuant the terms of the Public Meetings Law. TriMet did not agree that the Public Meetings Law would apply to the negotiating sessions and did not consent to holding open negotiating sessions. The parties were unable to resolve their dispute regarding the correct interpretation of the Public Meetings Law, and TriMet brought this action in the circuit court. TriMet sought a declaration "that collective bargaining sessions between TriMet's negotiating team and ATU are not subject to ORS 192.610 *et seq.,* governing public meetings" as well as a declaration that, "because collective bargaining sessions between ATU and TriMet's negotiating team are not public meetings, any actions taken in those meetings are not subject to challenge under ORS 192.680." As noted, both parties moved for summary judgment, and the trial court granted TriMet's motion.

B.  *Overview of the Public Meetings Law*

Before describing the rulings of the lower courts, we briefly describe the key provisions of the Public Meetings Law that are at the heart of the parties' dispute. The Public Meetings Law regulates the decision-making process of "governing bod[ies]" and "public bod[ies]." For purposes of TriMet's motion for summary judgment, TriMet assumed that its designated negotiating team would function in a way that makes it a "governing body" within the meaning of the Public Meetings Law, meaning that the team "consists of two or more members, with authority to make decisions for or recommendations to a public body on policy or administration." ORS 192.610(3).

As pertinent to the parties' dispute, the Public Meetings Law requires that most "meetings" of a governing body "shall be open to the public." ORS 192.630(1). A "meeting" is "a convening of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter," (except for limited situations that are not pertinent here). ORS 192.610(5). In addition, the Public Meetings Law specifies that a "quorum of a governing body may not meet in private for the purpose of deciding on or deliberating toward a decision on any matter," also subject to certain exceptions that are not pertinent here. ORS 192.630(2).

C.  *Lower Court Rulings*

In support of its motion for summary judgment, TriMet submitted an affidavit from Stedman asserting that there would be "no minimum number of the bargaining team that must be present before the bargaining team can engage in negotiations or take any action." According to TriMet, the affidavit establishes that TriMet's bargaining team would have no "quorum" requirement and, thus, that the team's bargaining sessions could not be "meetings" for purposes of the public meetings law, given the definition of "meeting" found in ORS 192.610(5).

In response, ATU raised a limited challenge to TriMet's contention that there is no quorum required for the proposed negotiating sessions between the ATU and

TriMet teams. Specifically, ATU argued that the ATU and TriMet negotiating teams, when combined, constitute a single group that is a "governing body," which has a quorum requirement because at least one person from each team must be present to conduct negotiations. Thus, according to ATU, the combined bargaining sessions fit the definition of a "meeting." ATU also argued that it was entitled to summary judgment in its favor based on another provision of the Public Meetings Law, ORS 192.660(3). That provision specifies that "[l]abor negotiations shall be conducted in open meetings unless negotiators for both sides request that negotiations be conducted in executive session." *Id.* The trial court granted TriMet's motion for summary judgment and denied ATU's motion. It entered a judgment declaring that "[c]ollective bargaining sessions between TriMet's negotiating team and the ATU bargaining team are not 'meetings' subject to ORS 192.610 *et seq.* governing public meetings."

ATU appealed, and the parties reprised the arguments they had made in the trial court. The Court of Appeals reversed. As an initial matter, the Court of Appeals rejected ATU's argument that ORS 192.660(3) entitles ATU to judgment as a matter of law that TriMet is required to conduct collective bargaining sessions in "the context of open meetings." *TriMet*, 276 Or App at 523. The court also rejected ATU's argument that the bargaining sessions constitute a "meeting" because the negotiating teams, together, constitute a single "governing body" with a quorum requirement. *Id.* at 524.

Finally, the court assumed that Stedman's affidavit established that the negotiating sessions would not qualify as a "meeting," because TriMet had not required a quorum for its team. The court, nonetheless, concluded that the trial court erred in granting TriMet's motion for summary judgment because it concluded that ORS 192.630(2) remains a potential obstacle to private bargaining sessions even if the sessions are not "meetings," as that term is defined for purposes of the Public Meetings Law. In reaching that conclusion, the Court of Appeals relied on its decision in *Handy v. Lane County*, 274 Or App 644, 362 P3d 867 (2015), *aff'd in part on other grounds*, 360 Or 605, 395 P3d 1016 (2016),

which that court issued while the appeal in this case was pending. In its opinion in this case, the Court of Appeals explained:

> "*Handy* clarifies that the Public Meetings Law applies not only to formal 'meetings' of governing bodies (that is, formal 'convening[s] *** for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter[,] ORS 192.610(5)), but also to circumstances in which a quorum of a governing body 'meets' to deliberate toward or make a decision outside the context of a 'meeting.'"

*TriMet*, 276 Or at 525 (quoting *Handy*, 274 Or App at 657 (brackets and ellipsis in *TriMet*)). The court reasoned that, regardless of whether TriMet requires a quorum for its negotiating team to convene a bargaining session, the negotiating team has a "quorum" because:

> "A quorum is simply 'the number of the members of an organized body of persons *** that when duly assembled is legally competent to transact business in the absence of the other members: a usu. specified number of members (as an absolute majority) in the absence of which an organized body cannot act legally ***.' *Webster's Third New Int'l Dictionary* 1868 (unabridged ed 2002)."

*TriMet*, 276 Or App at 526 (ellipses in original; footnote omitted). The court reasoned that, "if TriMet's negotiating team is, in fact, a governing body," then some number of the members constitute the team's quorum. *Id.* Accordingly, the Court of Appeals concluded that there may be circumstances under which subsection (2) of ORS 192.630 would apply to the bargaining sessions and that, on this record, TriMet was not entitled to summary judgment. *Id.* at 527.

## II.   ANALYSIS

On review, TriMet urges this court to reverse the decision of the Court of Appeals and, instead, to affirm the trial court's decision that TriMet is entitled, as a matter of law, to the declaration that it seeks. ATU, on the other hand, urges this court to affirm the Court of Appeals' decision that TriMet is not entitled to summary judgment and

also to conclude that ATU is entitled to summary judgment because the bargaining sessions are subject to the "open meetings" requirement of ORS 192.660(3).[2]

Each party moving for summary judgment has the burden of demonstrating that there are no material issues of fact and that it is entitled to judgment as a matter of law. ORCP 47 C. On review of a trial court's grant of summary judgment, we view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the nonmoving party. *Yeatts v. Polygon Northwest Co.*, 360 Or 170, 172, 379 P3d 445 (2016). Thus, with respect to TriMet's motion, we view the facts in the light most favorable to ATU, but, with respect to ATU's motion, we view the facts in the light most favorable to TriMet. *See Bagley v. Mt. Bachelor, Inc.*, 356 Or 543, 545, 340 P3d 27 (2014) (setting forth standard). We will begin by considering TriMet's motion for summary judgment and the challenge that it raises to the Court of Appeals' decision.

A.    *Whether TriMet established that no "quorum" of its bargaining team will "meet" for purposes of ORS 192.630(2) during the planned negotiating sessions*

In moving for summary judgment, TriMet sought to establish that, as a matter of law, no provision of the Public Meetings Law prevented TriMet from insisting that future collective bargaining sessions be conducted in private. We note at the outset that the dispute is poorly suited for resolution on summary judgment, in part because the material facts depend upon how the parties anticipate conducting their labor negotiations in the future. The record fails to eliminate questions of fact that ultimately will be essential to determining whether the Public Meetings Law will apply to those bargaining sessions, including whether the TriMet

---

[2] ATU also renews its argument that the relevant "governing body" is the combination of bargaining teams for both TriMet and ATU, that the combined body does require a quorum requirement to conduct the negotiations—at least one person from each team—and, thus, that the combined convening of both teams constitutes a "meeting." We adopt without further discussion the conclusion of the Court of Appeals that any entity created by combining the two negotiating teams does not meet the definition of a "governing body" subject to the Public Meetings Law, as set out in ORS 192.610(5). *See* 276 Or App at 524.

negotiating team will function in ways that make it a "governing body" and whether the nature of the discussions will amount to the TriMet team "deciding on or deliberating toward a decision," to trigger either subsection (1) or (2) of ORS 192.630.

Nevertheless, TriMet has attempted to narrow the issues in dispute by conceding—for purposes of its summary judgment motion—that the TriMet bargaining team is a "governing body," as that term is defined for purposes of the Public Meetings Law, ORS 192.610(3). We are not asked to, and we do not, express any opinion as to whether TriMet's concession is correct either as a matter of statutory interpretation or in the factual context of TriMet's anticipated bargaining with ATU. According to TriMet, even if the TriMet negotiating team is a "governing body," Stedman's affidavit establishes that TriMet has imposed no quorum requirement for the TriMet team to participate in the bargaining sessions. That fact, TriMet argues, establishes as a matter of law that the TriMet team may negotiate in private without violating either the open "meetings" requirement of ORS 192.630(1) or the prohibition in ORS 192.630(2) that a "quorum" of a governing body generally may not "meet" in private to deliberate toward a decision.

ATU, for its part, does not specifically dispute Stedman's assertion that TriMet has imposed no quorum requirement on its bargaining team or that the lack of a specified quorum requirement means that a convening of the TriMet team at a bargaining session does not constitute a "meeting," for purposes of ORS 192.630(1). ATU contends, however, that the Court of Appeals correctly concluded that a quorum of a governing body can "meet" in violation of ORS 192.630(2) even if the governing body has no specified quorum requirement.

As framed by the parties' arguments and concessions on review, TriMet's challenge to the decision of the Court of Appeals presents a narrow issue of statutory construction: whether the Court of Appeals correctly held that it is possible for a "quorum" of a "governing body" of a public body to "meet in private," in violation of ORS 192.630(2), even if the public body has specified no quorum

requirement when delegating authority to the governing body.[3] That holding depended in part upon the Court of Appeals' earlier conclusion in *Handy* that the term "meet," as used in ORS 192.630(2), describes some deliberations of a governing body that would not constitute a "meeting" within the scope of the Public Meetings Law, ORS 192.610(5). 276 Or App at 525.[4] The Court of Appeals' holding also depends upon a conclusion that it is possible for a "quorum" of the bargaining team to meet even if TriMet did not impose a quorum requirement when delegating negotiating authority to the bargaining team. TriMet challenges both conclusions.

TriMet's challenges require us to determine what conduct the legislature intended ORS 192.630(2) to prohibit. In interpreting statutes, we seek to determine the legislature's intention, by reviewing the statutory text and context, and, if the court concludes that it appears useful to the analysis, the legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The text, however, is the most persuasive evidence of the legislature's intent, because only the text "receives the consideration and approval of a majority of the members of the legislature." *Id.* at 171. In our examination of the text, we generally begin with the terms that the legislature used. *Delta Logistics, Inc. v. Employment Dept. Tax Section*, 361 Or 821, 826, 401 P3d 779 (2017). Here, the pertinent text appears in the two provisions through which the legislature has limited the ability of a governing body to deliberate or make decisions in private:

"(1)   All meetings of the governing body of a public body shall be open to the public and all persons shall be permitted to attend any meeting except as otherwise provided by ORS 192.610 to 192.690.

"(2)   A quorum of a governing body may not meet in private for the purpose of deciding on or deliberating toward

---

[3]  Given how the parties have framed the dispute on review, we need not consider whether Stedman's affidavit, in fact, establishes that there will be no convening of a "meeting" subject to ORS 192.630(1) when the TriMet team gathers for the collective bargaining sessions.

[4]  This court affirmed the decision of the Court of Appeals in *Handy* on other grounds, without addressing the determination that ORS 192.630(2) reaches conduct that ORS 192.630(1) does not.

a decision on any matter except as otherwise provided by ORS 192.610 to 192.690."

ORS 192.630.

1. *Whether a governing body can "meet" without holding a "meeting"*

TriMet's challenge to the decision of the Court of Appeals begins with that court's conclusion that a governing body may "meet" in violation of ORS 192.630(2) even if there is no "meeting." TriMet contends that the term "meet" as used in ORS 192.630(2) merely refers to the act of convening a "meeting" within the definition of the Public Meetings Law and, thus, that without a quorum requirement, a governing body will never hold a "meeting" subject to ORS 192.630(1) and also will never "meet" within the meaning of ORS 192.630(2). An examination of the text and statutory context persuades us that the legislature intended the term "meet," to which ORS 192.630(2) applies, to mean more than simply the act of convening a "meeting," to which ORS 192.630(1) applies.

Although TriMet emphasizes that the words "meeting" and "meet" are similar, that similarity does not resolve what the legislature intended ORS 192.630(2) to prohibit. One obvious difference between the terms is that "meeting" is a noun while "meet," as it is used in ORS 192.630(2), is a verb. More significantly, "meet" is not defined in the Public Meetings Law, while "meeting" is narrowly defined by ORS 192.610(5) to mean "the convening of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter."

When terms of common usage, such as "meet," are not defined by the legislature, we frequently consult dictionary definitions to determine the meaning of such terms "on the assumption that, if the legislature did not give the term a specialized definition, the dictionary definition reflects the meaning that the legislature would naturally have intended." *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014). In common usage, the verb to "meet" means "to join (a person) in conversation, discussion, or social or business intercourse : enter into conference, argument, or personal

dealings with[.]" *Webster's Third New Int'l Dictionary* 1404 (unabridged ed 2002). Nothing in that ordinary meaning of the term "meet" suggests that the result of that act will be a "meeting" in the narrow sense that ORS 192.610(5) defines the term.

That difference between the terms is potentially significant. We have acknowledged that the legislature sometimes uses different words to mean the same thing. *Brown v. SAIF,* 361 Or 241, 260 n 6, 391 P3d 773 (2017). However, we have also emphasized that, when "the legislature uses *different* terms in related statutes, it likely intended them to have different meanings." *Northwest Natural Gas Co. v. City of Gresham,* 359 Or 309, 323, 374 P3d 829 (2016) (emphasis in original). Thus, a focus on the term "meet," in isolation, does not resolve what the legislature intended ORS 192.630(2) to prohibit.

Several contextual indications suggest, however, that the legislature intended the verb "meet" to reach some conduct that is not covered by the defined term "meeting." First, subsection (2) of ORS 192.630 uses the phrase "meet in private" to describe the conduct that is prohibited as to government bodies. The phrase is an anomaly in the Public Meetings Law; the rest of the statutes use the term "executive session" when referring to a "meeting" or part of a meeting that is closed to the public to some extent. *See, e.g.*, ORS 192.610(2) (defining "executive session" as "any meeting or part of a meeting of a governing body which is closed to certain persons for deliberation on certain matters"); ORS 192.660 (describing when public body may hold "executive session" rather than "open meeting"). If ORS 192.630(2) applied only to "meetings" of a governing body, then the conduct that the statute prohibits would also constitute a "meeting" in "executive session." The legislature's use, instead, of the phrase "meet in private" in ORS 192.630(2) suggests that it intended ORS 192.630(2) to reach some private deliberations that are not a "meeting" in "executive session." *See Northwest Natural Gas*, 359 Or at 323 (describing principle for determining legislative intent).

Second, TriMet's construction of the phrase "may not meet" in ORS 192.630(2) as meaning the same thing

as "may not hold a meeting" creates a redundancy, which is "something that we seek to avoid in interpreting statutes." *State v. Kellar*, 349 Or 626, 636, 247 P3d 1232 (2011). Read with the substitution that TriMet proposes, the prohibition in ORS 192.630(2) applies only when there is: (1) a meeting; (2) of a "quorum of a governing body"; that (3) is "for the purpose of deciding on or deliberating toward a decision on any matter." Under those circumstances, the gathering of the governing body may not be "in private *** except as otherwise provided by ORS 192.610 to 192.690." *Id.*

Yet ORS 192.630(1) imposes that same restriction under the same circumstances. As is clear from an examination of the statutory text and definitions, ORS 192.630(1) applies when there is: (1) a "meeting," which by definition requires; (2) a "quorum" of a "governing body," ORS 192.610(5); in order (3) "to make a decision or to deliberate toward a decision on any matter." Under those circumstances, the gathering of the governing body must be "open to the public"—*i.e.*, may not be in private—"except as otherwise provided by ORS 192.610 to 192.690." ORS 192.630(1).

In other words, read as TriMet proposes, a governing body violates subsection (1) of ORS 192.630 every time that it violates subsection (2) of the same statute. We have emphasized, however, that "an interpretation that renders a statutory provision meaningless should give us pause, both as a matter of respect for a coordinate branch of government that took the trouble to enact the provision into law and as a matter of complying with the interpretive principle that, if possible, we give a statute with multiple parts a construction that 'will give effect to all' of those parts." *State v. Cloutier*, 351 Or 68, 98, 261 P3d 1234 (2011) (quoting ORS 174.010).[5] Thus, the redundancy that is created by TriMet's

---

[5] TriMet argues that its construction does not render subsection (2) meaningless because subsection (1) sets out a "positive admonition" while subsection (2) sets out the same requirement as a "negative prohibition," which adds "clarity and emphasis," quoting *Handy,* 274 Or App at 682-86 (DeVore, J., dissenting). In other words, TriMet proposes that legislative redundancy may sometimes be intentional. We do not suggest that redundancy is never intentional, but a proposed construction that renders a statutory provision redundant will always "give us pause," s*ee Cloutier*, 351 Or at 98, particularly when additional context suggests that the legislature intended more than a mere restatement of another provision.

construction of ORS 192.630(2) calls into question TriMet's construction of the statute.

Finally, the context supplied by the overarching policy of the Public Meetings Law also suggests that TriMet's construction of ORS 192.630(2) is not correct. The Public Meetings Law contains an explicit general policy statement:

> "The Oregon form of government requires an informed public aware of the deliberations and decisions of governing bodies and the information upon which such decisions were made. It is the intent of ORS 192.610 to 192.690 that decisions of governing bodies be arrived at openly."

ORS 192.620. The two provisions that explicitly give effect to that policy of open deliberations are ORS 192.630(1) and (2). Yet TriMet contends that both provisions become inapplicable if a public body authorizes its governing bodies to conduct their delegated duties without a specified quorum requirement. That single decision, according to TriMet, excludes the work of the governing body both from the definition of a "meeting" and, thus, the "open meetings" requirement of ORS 192.630(1), as well as from the limitation that ORS 192.630(2) imposes on a governing body's ability to "meet in private for the purpose of deciding on or deliberating toward a decision." In other words, TriMet's construction of ORS 192.630(2) would mean that a public body could shield deliberations and decisions on a given matter from public scrutiny simply by delegating authority over those deliberations and decisions to a governing body and failing to specify a quorum requirement for the governing body to act.[6] That result would severely undermine the policy "that decisions of governing bodies be arrived at openly." ORS 192.620. Combined with the other contextual indications of legislative intent, the overarching policy of the Public Meetings Law persuades us that the legislature intended the broad language of ORS 192.630(2) ("may not meet in private") to reach some decision-making of a governing body that does not occur in a "meeting."

---

[6] In highlighting that result of TriMet's construction of ORS 192.630, we do not suggest that TriMet acted within any intention to avoid the requirements of the Public Meetings Law.

Nothing in the legislative history of the Public Meetings Law demonstrates a legislative intent that ORS 192.630(2) function merely as a restatement of the open "meetings" requirement in ORS 192.630(1). The Public Meetings Law, which originated as Senate Bill (SB) 15, was enacted in 1973. Or Laws 1973, ch 172. The definitions of "decision, "executive session," and "governing body" remain the same as originally enacted. The pertinent definition of "meeting" also remains the same as the original enactment.[7] Finally, both ORS 192.630(1) and (2) were also enacted as part of the 1973 legislation, and both remain substantially the same today as when originally enacted.[8] Or Laws 1973, ch 172, § 3.

SB 15 was initially referred to the Joint Special Committee on Professional Responsibility (JSCPR). When referred, SB 15 contained only the provision that ultimately would become ORS 192.630(1), but the JSCPR Committee added subsection (2). Tape Recording, JSCPR, Senate Bill (SB) 15, Mar 19, 1973, Tape 3, Side 2. The legislature took the wording for the new subsection—that no governing body "shall meet privately for the purpose of discussing or conducting public business"—from an alternative public meetings bill that the Attorney General had proposed. *Id.* Jim Durham, a representative of the Attorney General, testified that adding that text to the bill would broaden the bill. *Id.* Although one committee member proposed adding the suggested text to the definition of the term "meeting," the committee added the Attorney General's proposed requirement as a stand-alone provision of SB 15. *Id.*

Nothing in the legislative history of SB 15 discloses a clear intent that the added provision, ORS 192.630(2), merely function as an alternative phrasing of the same

---

[7] An additional sentence was added to the definition of "meeting," in ORS 192.610(5), in 1979. Or Laws 1979, ch 644, § 1. That sentence—"'[m]eeting' also does not include the attendance of members of a governing body at any national, regional or state association to which the public body or the members belong"—has no bearing on the issues in this case.

[8] As originally enacted, the first part of ORS 192.630(2) provided that "[n]o quorum of a governing body shall meet in private" rather than the current: "[a] quorum of a governing body may not meet in private." Or Laws 1973, ch 172, § 3(2). The parties do not contend that that change was substantive.

requirement set out in ORS 192.630(1). Again, the best evidence of what the legislature intended a statute to mean is the wording of the statute that it adopted into law. *See Brown,* 361 Or at 249 (describing essential principle). Here, that best evidence persuades us that the legislature intended that a "quorum of a governing body" could "meet " within the scope of ORS 192.630(2), even if the result is not a "meeting" within the scope of ORS 192.630(1).

2. *Whether TriMet established that its negotiating team has no "quorum"*

We turn to TriMet's second challenge to the Court of Appeals' construction of ORS 192.630(2)—that the TriMet negotiating team has no "quorum." TriMet argues that, regardless of whether ORS 192.630(2) applies to some deliberations of a governing body that occur outside of a "meeting," the statute applies only when a "quorum" of a governing body meets in private. TriMet insists that it has established, as a matter of law, that no "quorum" of the TriMet team will meet during the bargaining sessions, given Stedman's statement that there is no "minimum number of members of the bargaining team that must be present before the bargaining team can engage in negotiations or take any action." TriMet's argument assumes that whether a governing body has a "quorum" is entirely a factual question, as to which Stedman's representation is dispositive. TriMet is wrong on both counts.

First, we emphasize that we must view Stedman's affidavit, and all reasonable inference that may be drawn from it, in the light most favorable to ATU, the party who opposed the motion for summary judgment. *See Yeatts*, 360 Or at 172. Viewed in that light, we understand the affidavit to mean that, in delegating collective bargaining authority to Stedman and the TriMet negotiating team, TriMet did not specify that a minimum number of members of its bargaining team must be present before the TriMet bargaining team can engage in negotiations with ATU. Whether that failure to specify a minimum participation number establishes that no "quorum" exists for the TriMet team depends in part upon the meaning of the term "quorum" in ORS 192.630(2).

We determine what the legislature intended by the term "quorum" in ORS 192.630(2) as a legal matter, through our established method of statutory construction, giving the greatest consideration to the text that the legislature adopted. *See Gaines*, 346 Or at 171. Although not specifically defined by Oregon statute, "quorum" has a well-established meaning in both ordinary and legal usage. As pertinent to its use in the Public Meetings Law, the term "quorum" has long been defined as "the number of the members of an organized body of persons (as a legislature, court, or board of directors) that when duly assembled is legally competent to transact business in the absence of the other members[.]" *Webster's Third New Int'l Dictionary* 1868 (unabridged ed 2002); s*ee also Black's Law Dictionary* 1421 (4th ed 1968) (defining "quorum" in part as "[s]uch a number of the members of a body as is competent to transact business in the absence of the other members"); *Black's Law Dictionary* 1446 (10th ed 2014) (defining "quorum" in part as "[t]he smallest number of people who must be present at a meeting so that official decisions can be made"). Those definitions suggest that "quorum" is a concept that applies to every organized body. In other words, for every organized body, there is some minimum number of members that must participate in order for the body to be competent to transact business. Thus, every organized body has a "quorum."

The way that the word "quorum" is used in the Public Meetings Law comports with that ordinary usage. That is, the definitions contained in the public meetings law suggest that the legislature presumed that every "governing body" will have a "quorum" that is necessary to make "decisions." *See* ORS 192.610(1). Given that meaning of the term "quorum," the number of members of a governing body that constitutes the body's quorum may be a question of fact, but whether the TriMet bargaining team, or any governing body, has a "quorum" is not a question of fact.

Indeed, even the number of members that constitute a quorum of a particular governing body is not entirely a question of fact. As the Court of Appeals noted, the legislature appears to have established a "default quorum" number consisting of a majority of a governing body. 276 Or App

at 526 n 8 (citing ORS 174.130); *see, e.g.*, *People for Ethical Treatment v. Inst. Animal Care*, 312 Or 95, 103, 817 P2d 1299 (1991) (describing ORS 174.130 as a "quorum requirement"). That default statute specifies that, "unless expressly otherwise provided by law," the "authority conferred by law upon three or more persons may be exercised by a majority of them." ORS 174.130.[9]

On this summary judgment record, TriMet has offered no basis to conclude that the TriMet negotiating team is *not* subject to ORS 174.130. On the contrary, it appears that the collective bargaining authority that TriMet has delegated to its negotiating team—a body that consists of more than three persons—is authority that is conferred by law. TriMet's authority to exist and operate as a mass transit district is conferred by law. ORS 267.080. All of TriMet's authority to act is conferred by law, including specifically the ability to "[e]nter into contracts and employ agents, engineers, attorneys and other persons and fix their compensation." ORS 267.200(5). Indeed, TriMet does not dispute, for purposes of its summary judgment motion, that its negotiating team may be exercising authority conferred by law when it engages in the bargaining sessions.

Ultimately, however, the question is not whether ORS 174.130 controls the quorum number of the TriMet bargaining team but whether TriMet has established as a matter of law that no "quorum" of the TriMet bargaining team will "meet" within the meaning of ORS 192.630(2). TriMet moved for summary judgment on the narrow basis that Stedman's affidavit establishes that TriMet's bargaining team will never assemble a "quorum" of its members. However, Stedman's affidavit establishes only that TriMet chose not to specify a minimum attendance requirement for its bargaining team. That affidavit does not preclude a determination that, by default, the "quorum" consists of a majority of the members of the team or, perhaps, that the team's "quorum" is simply the number of members who,

---

[9] In standard legal usage, a quorum is typically considered to be "[a] majority of the entire body." *Black's* 4th ed at 1421. *See also Black's* 10th ed at 1446 (describing a "quorum" as "a majority of all the members, unless otherwise specified in the governing documents").

in fact, show up to exercise the bargaining authority that TriMet has delegated to the team. Thus, Stedman's affidavit does not establish as a matter of law that no "quorum" of the TriMet bargaining team will "meet" within the meaning of ORS 192.630(2) when the team participates in the planned, future negotiations. Given TriMet's concession that its negotiating team is a "governing body," the Court of Appeals correctly concluded that TriMet failed to establish, on this summary judgment record, that it is entitled as a matter of law to a declaration that its bargaining team can "meet in private" to deliberate toward a collective bargaining agreement without violating ORS 192.630(2).[10]

B.    *Whether ORS 192.660(3) requires that the negotiations be conducted in "open meetings"*

We briefly address ATU's argument that, even if TriMet ultimately establishes that neither provision of ORS 192.630 applies to the bargaining sessions, the sessions nevertheless must be conducted in open meetings under ORS 192.660(3). That argument was the basis for ATU's cross-motion for summary judgment and, if correct, would provide a more complete resolution for the dispute on remand. The pertinent statutory text provides:

> "Labor negotiations shall be conducted in open meetings unless negotiators for both sides request that negotiations be conducted in executive session."

ORS 192.660(3).

ATU construes that statute to require that a public body engaging in labor negotiations must do so in an "open meeting," unless both sides agree to "executive session." That construction is the basis on which ATU contends that it is entitled to summary judgment in its favor. It reasons that ATU's refusal to agree that negotiations may be conducted in executive session means that the TriMet team must bargain in an "open meeting." The implications

---

[10] The Court of Appeals vacated, rather than reversed, the trial court's judgment in TriMet's favor, for further consideration in light of the court's decision in *Handy*. 276 Or App at 515. Although we agree with the Court of Appeals that the record does not support a grant of summary judgment in TriMet's favor, we conclude that there is no need for reconsideration of that ruling in light of *Handy*. Thus, we reverse and remand the judgment of the trial court.

of ATU's construction of ORS 192.660(3) are significant. If correct, that construction would mean that a public body must conduct all labor negotiations in a "meeting," either open or closed, because an "executive session" is a "*meeting or part of a meeting of a governing body*" that is "closed to certain persons for deliberation on certain matters." ORS 192.610(2) (emphasis added). If all public body labor negotiations had to be conducted in a "meeting," that would mean that a public body must conduct labor negotiations in a format that constitutes the "convening of a *governing body* of a public body." That is so because, as explained at the outset of this opinion, the "convening of a *governing body* of a public body" is part of the definition of a "meeting" under the Public Meetings Law. ORS 192.610(5) (emphasis added). In other words, ATU's construction reads ORS 192.660(3) as regulating *who* may conduct a public body's labor negotiations, in addition to regulating when the negotiations may be conducted in private.

TriMet acknowledges that the text of ORS 192.660(3), in isolation, could be read that broadly. It argues, however, that the statute, construed in context, means that *when* a public body conducts labor negotiations in sessions that qualify as "meetings," they must be "open" unless the parties agree otherwise. Under that construction, the provision does not necessarily prohibit a public body from conducting labor negotiations under circumstances that do not amount to a "meeting." We conclude that TriMet's construction of ORS 192.660(3) is more consistent with the broader statutory and historical context.

First, as emphasized above, if ORS 192.660(3) affirmatively requires public bodies to conduct all of their labor negotiations in either a closed or open "meeting," as ATU proposes, then by definition it requires public bodies to conduct their labor negotiations through a "governing body." ORS 192.610(5). Yet, if the legislature intended to require public bodies to conduct their labor negotiations through a "governing body," that construction would seemingly contradict another provision in ORS 192.660. That other provision, ORS 192.660(2)(d), specifies that "[t]he governing body of a public body may hold an executive session: *** To conduct deliberations with persons designated by the governing

body to carry on labor negotiations." That provision assumes that a governing body will sometimes carry out labor negotiations through designated "persons" who are not a governing body. The deliberations with designated persons that ORS 192.660(2)(d) contemplates could never arise, however, if labor negotiations must always be conducted by a "governing body." ATU's construction of ORS 192.660(3) thus appears to run afoul of a basic rule of statutory construction that, if possible, a statute that contains "several provisions or particulars" should be construed in a manner that "will give effect to all." ORS 174.010; s*ee also Cloutier*, 351 Or at 98 ("an interpretation that renders a statutory provision meaningless should give us pause").

Moreover, the broader context of ORS 192.660 as a whole suggests that subsection (3) should be construed as TriMet proposes. The numerous other provisions of ORS 192.660 regulate in detail when and how a governing body may deliberate or consider a matter in "executive session," *i.e.*, a "meeting" that is not fully "open." In other words, the purpose of ORS 192.660, as a whole, is to describe a governing body's ability to conduct its "meetings" in "executive session." That context suggests that ORS 192.660(3), which also describes the governing body's ability to hold an "executive session" as opposed to an "open meeting," is intended to serve the same purpose—that it merely specifies the circumstances under which a public body may conduct collective bargaining "meetings" in "executive session."

Indeed, that purpose was evident in earlier versions of ORS 192.660(3). As originally adopted in 1973, ORS 192.660(3) unambiguously regulated only when labor negotiations could be conducted in executive session: "Labor negotiations may be conducted in executive session if either side of the negotiators requests closed meetings." Or Laws 1973, ch 172, § 6(3). In 1995, that provision was amended to shift the preference away from holding labor negotiations in a "meeting" that would constitute an "executive session": "Labor negotiations shall be conducted in executive session unless either side of the negotiators requests open meetings." Or Laws 1995, ch 779, § 1(2). That text continued to describe *when* negotiating sessions could be conducted in executive session as opposed to in open meetings. Two years later, the

legislature amended ORS 192.660(3) to its current version, substituting language that more affirmatively expresses the 1995 preference for open meetings: "Labor negotiations shall be conducted in open meetings unless both sides of the negotiators request that negotiations be conducted in executive session." Or Laws 1997, ch 173, § 1(2). Read in that historical context, ATU's suggestion that the current version of ORS 192.660(3) was intended to mandate that a public body's labor negotiations be conducted under circumstances that constitute a "meeting," *i.e.*, only through a "governing body," would represent a significant shift in the purpose of the statute.

The most significant result of construing ORS 192.660(3) to require that a public body conduct all of its labor negotiations through a "governing body" is that it would prohibit the public body from using a single negotiator to conduct negotiations—because a "governing body" by definition "consists of two or more members." ORS 192.610(3). At the time that the legislature amended ORS 192.660(3), however, it would have been aware that public bodies sometimes employed individual negotiators to conduct their labor negotiations, both because the language of ORS 192.660 (2)(d) seems to contemplate as much and because the use of an individual negotiator was at issue in the 1977 Court of Appeals decision that, for decades, was the only appellate case to construe ORS 192.660(3). *See SW Ore. Pub. Co. v. SW Ore. Comm. Coll.,* 28 Or App 383, 559 P2d 1289, *rev den,* 279 Or 1 (1977) (construing ORS 192.660(3)). In *SW Ore. Pub.*, the public body had retained a private negotiator to conduct labor negotiations on its behalf. *Id.* The Court of Appeals held that ORS 192.660(3) did not apply to negotiations conducted by that private negotiator because the Public Meetings Law does not apply if "[a] retained labor negotiator is neither a member of a public body nor a governing body." *Id.* at 386.

ATU would read the 1997 amendments to ORS 192.660(3) as effectively overruling *SW Ore. Pub. Co.* and, moreover, prohibiting a public body from even using individual labor negotiators to conduct labor negotiations on its behalf. However, nothing in the legislative history

suggests that the legislature intended the rephrasing of ORS 192.660(3) in 1997 to accomplish such a significant departure from the original purpose of the provision and from the purpose of ORS 192.660 as a whole. Some comments of Representative Markham—who sponsored the 1997 bill to amend the Public Meetings Law—arguably could suggest that he favored such a significant overhaul of labor negotiating practices.[11] However, Representative Markham's proposal to specify simply that "[l]abor negotiations shall be conducted in open meetings" was rejected by the House Labor Committee in favor of the current text of ORS 192.660(3). Tape Recording, House Labor Committee, HB 2444, Mar 13, 1997, Tape 39, Side A. The legislative history primarily indicates that legislators understood that the 1997 amendment, in the form that they ultimately adopted, would create no significant change in the purpose of the statute. *See, e.g.,* Tape Recording, House Labor Committee, HB 2444, Mar 13, 1997, Tape 39, Side A (statement of Chair Harper: "I don't think any of us care how you implement it. It reads the same way now just in reverse is all."); *id.* (statement of Oregon School Employees Association representative Tricia Smith: "I think that the current law essentially accomplishes the same thing."); Tape Recording, Senate Business, Law and Government Committee, HB 2444, Apr 28, 1997, Tape 194, Side A (statement of Senator Bryant: "So all we've done is turned around the way they request the executive sessions."). Ultimately, the significance of the legislative history is that it does not disclose a clear intent to change ORS 192.660(3) from a statute that limits *when* a labor negotiations involving a public body may be conducted in executive session to a statute that limits *who* may conduct labor negotiations on behalf of a public body—a "governing body"—and *how* those negotiations must be conducted—by convening a "meeting."

We, thus, agree with the Court of Appeals that ORS 192.660(3) governs when a public body's labor negotiations

---

[11] Representative Markham expressed frustration that, in negotiations between the governor and the public employee unions, "they come to an agreement, * * * and hand the legislature a bill. And that's all the legislature has to do is pay the damn bill." Tape Recording, House Labor Committee, HB 2444, Mar 13, 1997, Tape 39, Side A.

may be conducted in a "meeting" that is partly private, rather than in a "meeting" that is open. In that sense, ORS 192.660(3) functions as a limited exception to the requirement that all "meetings" of a "governing body" must generally be open to the public; if both parties consent, a "meeting" to negotiate may be held in executive session. The record on summary judgment fails to establish that a convening of the team for the bargaining sessions is a "meeting," and, thus, precludes any determination as a matter of law that ORS 192.660(3) controls whether the bargaining session may be conducted in private. Thus, the trial court correctly denied ATU's motion for summary judgment.

## III.   CONCLUSION

Our holding with respect to TriMet's motion for summary judgment is narrow. We conclude only that this summary judgment record fails to eliminate questions of fact that must be resolved before a determination can be made that, as a matter of law, the proposed bargaining sessions will (or will not) be subject to the Public Meetings Law. Accordingly, we affirm the judgment of the Court of Appeals and reverse the judgment of the trial court.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.